THE STATE, CHAS. KEELER AND OTHERS, PROSECUTORS, v. WILLIAM C. TINDALL, COLLECTOR OF EWING, &c., DEFENDANT.

1. Under the eighth section of the tax law of 1866, (*Nix. Dig.* 952,) it is not necessary, in order to make a valid assessment, that the assessor shall examine persons to be assessed by oath or affirmation.

2. The essential thing to be done by the assessor under this act is to *ascertain*, to the best of his ability and according to his own judgment, the names of the persons taxable, and the actual value of all taxable property ; and this he is to do by diligent inquiry, by the oath or affirmation of the persons to be assessed, or of other persons if necessary, and by personal examination of the property to be valued.

3. With respect to the enumerated means or sources of information, by or from which the value of property is to be ascertained by the assessor, the act is not mandatory, but merely directory.

On *certiorari.*   In matter of taxation.

For the prosecutors, *G. D. W. Vroom.*

For the defendant, *W. D. Holt.*

WOODHULL, J.   It is insisted that the assessment brougnt up by this writ ought to be set aside as to the prosecutors, because, in the first place, the assessor failed to require of them sworn statements as to the actual value of their taxable property.

In support of this objection, we are referred to that part of the eighth section of the tax law of 1866, (*Nix. Dig.* 952,)* which provides that the assessor shall annually ascertain, by diligent inquiry, and by the oath or affirmation of the persons to be assessed, and, if necessary, of other persons, according to the best of his ability, and according to his own judgment after examination and inquiry, the names of all the persons, and the actual value of all the property taxable in his township.

*Rev., p. 1153, § 67.

State, Keeler et al., Pros., v. Tindall, Collector of Ewing.

This section confers upon the assessor a new power, that of examining persons to be assessed, and others, by oath or affirmation, but we do not understand it to mean that this power must in every case be exercised in order to make a valid assessment.

The essential thing to be done by the assessor under this act is to *ascertain*, to the best of his ability, and according to his own judgment, the names, &c., and the actual value, &c. He is to do this by diligent inquiry, by the oath or affirmation of the persons to be assessed, by the oath, &c., of other persons if necessary, and by personal examination of the property to be valued.

These are merely the means or sources of information, to one or more of which he must necessarily resort in order to ascertain the value, &c., so as to satisfy his judgment. But having ascertained, &c., by the use of any of the enumerated means—for example, by diligent inquiry in the ordinary way, and by personal examination of the property—it can hardly be supposed that the legislature would impose upon the assessor the nugatory task of ascertaining the same thing by the use of different means, no more competent and certainly no more reliable than those resorted to in the first place. If the words " shall ascertain, &c., and by the oath, &c.," are imperative in regard to the oath of the person to be assessed, they are equally so as to some of the other means, &c., mentioned in this section ; and if imperative as to any of these for the purpose of ascertaining the value, &c., they can not be less so for the purpose of ascertaining the names, &c. For the names of all persons to be assessed, and the actual value of their taxable property are to be ascertained by precisely the same means.

The true sense of this part of the act, considering merely its language and the character of its provisions, seems to be that it is mandatory only so far as it relates to the chief duty enjoined upon the assessor, viz.: the making up by him of an independent judgment as to the actual value of the property to be assessed; and that with respect to the enumerated

means or sources of information, by or from which the value is to be ascertained, the act is merely directory.

A glance at the changes introduced by the act of 1866 in the methods of ascertaining values for the purposes of taxation, will serve to confirm the conclusion.

A marked feature in the policy of the acts of 1851 and 1854, was the taxation of all property at its full value. (*Acts*, 1851, *p.* 272, § 2; *Acts*, 1854, *p.* 296, § 2.)

With the view of reaching this result, assessors were required to ascertain the same things as under the act of 1866— the names, &c., and the values, &c. They were to do this by diligent inquiry, and according to the best of their ability, (1851, § 8; 1854, § 8.) But if the person to be assessed, chose to make oath that the value of his property did not exceed a certain sum, the assessor was bound to accept his judgment as final, in regard to that matter. *Acts*, 1851, *p.* 274, § 10; *Acts*, 1854, *p.* 299, § 10.

The results of this method of ascertaining the value of taxable property were not satisfactory. Under its operation a vast amount of the property in the state was notoriously taxed far below its actual value.

The act of 1866 reaffirms and emphasizes the policy of the earlier acts, (*Nix. Dig.* 951, § 2,)* declaring that all property within this state shall be liable to taxation at the full and actual value thereof; and with the view of securing a more thorough enforcement of this policy, it withdraws the question of value from the owner, and commits it exclusively to the judgment of the assessor himself, furnishing him, at the same time, with a means of informing his judgment, not previously within his reach, viz.: the right to examine, on oath, the person to be assessed, and if necessary, other persons. Such being the spirit and purpose of the act, and such the object of this provision, can we doubt that the legislature intended to allow the assessor to decide for himself whether or not he would require, from the person assessed, a sworn statement of the value of his property?

The danger to be guarded against, being not a tendency to

* *Rev., p.* 1150, § 61.

State, Keeler et al., Pros., v. Tindall, Collector of Ewing.

overvalue, but almost universally to undervalue property for purposes of taxation, why should the assessor be compelled to examine on oath, the only persons specially interested, to estimate the property at less than its full value?

The very fact of his being required to resort, in all cases, to the testimony of the owners, would be likely to induce him to defer too much to their judgment, and to rely too little upon his own; and would tend, almost necessarily, to keep assessments below the actual value, and so to defeat the purpose of the act.

For these reasons we cannot accept the construction of the clause "shall ascertain, &c.," contended for on the part of the prosecutors, and I think that the first objection to the assessments ought not to prevail.

It is further objected to these assessments, that they are excessive and illegal; and that they are based upon the amount of the yearly rental of the properties assessed, and not upon the full and actual value thereof, as required by law.

These objections involving merely questions of fact, which must be determined by the testimony taken in the cause, we think it sufficient to say that we do not find either of them so clearly sustained by the evidence as to warrant us in disturbing the assessments, or either of them; and they are, therefore, affirmed.

CITED in *State, Robbins, pros.* v. *Treasurer, &c.,* 9 *Vr.* 212.