HERBERT HARVEY, PLAINTIFF, v. ORLAND PROPERTIES, INC., A NEW JERSEY CORPORATION; FREDA SOLOMON, PAT ROMANELLI, SARA ROMANELLI, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 29, 1970.

494

*Mr. Herbert Harvey* appeared *pro se.*

*Mr. Patrick D. Healy* appeared for defendant Freda Solomon (*Messrs. Karcher and Reavey,* attorneys).

*Mr. James C. Orr* appeared for defendants Pat Romanelli and Sara Romanelli (*Messrs. Lum, Biunno & Tompkins,* attorneys).

LANE, J. S. C. This matter is before the court on final hearing. The complaint seeks to foreclose a mortgage dated June 10, 1964 made by defendant Orland Properties, Inc. (Orland) to plaintiff. Solomon and the Romanellis each seek a judgment quieting their title to the property.

The property is described in the mortgage and all deeds involved as being in the Township of Millstone, County of Monmouth. On December 27, 1943 there was a tax sale by Millstone to Mrs. Harriet Robbins for the 1941 and the 1942 taxes. The tax sale certificate describes the property as "34.19 acres and assessed thereon to Mrs. Franklin C. Price as owner." The property was and is vacant land.

On September 24, 1963 a complaint to foreclose the right of redemption was filed on behalf of Mrs. Robbins. Final judgment of foreclosure was signed December 26, 1963. See *N. J. S. A.* 54:5–79. From date of the tax sale Mrs. Robbins paid the taxes to Millstone until she sold the property to the Romanellis. The conveyance from Robbins to

the Romanellis was by deed dated September 4, 1965. The purchase price, computed on the basis of $100 an acre as taken from a plotting made for Mrs. Robbins, was $3,377. Since their purchase the Romanellis have paid taxes.

Harvey learned of the foreclosure proceedings. On behalf of Orland he attempted to locate the heirs of the last record owner. He was successful and obtained deeds from them shortly after the final judgment for a nominal consideration.

The title is undisputed up to the foreclosure judgment. Franklin C. Price acquired title in 1918. He died June 9, 1923 leaving a will devising the premises to his sons Frank Ray Price and Neal Heath Price. On November 4, 1944 Frank Ray Price died, intestate, leaving a widow Lorraine and a son Lawrence Waln Price. On December 30, 1951 Neal Heath Price died intestate, leaving a widow Ella and a daughter Anna Louise Price.

On December 23, 1963 Harvey wrote to Lawrence Waln Price saying:

This letter relates to a tract of vacant land in Millstone Township in which, according to the record, your late grandfather, Franklin C. Price, had an interest. The lot was sold for taxes many years ago and a tax foreclosure action is now pending against it.

Following the death of Franklin C. Price in 1923 and the subsequent death of your late father, F. Ray Price, you may claim an interest in the property under foreclosure. We are writing to inquire whether you will furnish a voluntary release of your possible claim. A courtesy consideration of $50. will be paid you for the release.

The proposed instrument is enclosed. It requires to be signed in the presence of a Notary Public. When so executed it will have the effect of releasing any claim which you have or may have in the property therein described.

Upon receipt of this instrument here, executed as above, we will forward you our check of $50. in payment.

Since the time under the foreclosure is up, we will need to receive the executed deed by *return mail*. A return special delivery envelope is enclosed for the purpose. We regret not having written sooner, but we only just now learned your address.

Your cooperation with regard to the time is appreciated.

On December 24, 1963 Harvey wrote an almost identical letter to Anna Louise Price. After some correspondence

with each he received deeds from them to Orland. The deed from Lawrence Waln Price was dated December 31, 1963. The deed from Anna Louise Price was dated January 30, 1964. He received a deed from Lorraine Price dated April 28, 1964, and a deed from Ella Price dated April 24, 1964. All of these deeds were quitclaim deeds. The total consideration paid by Harvey was $152.50.

The mortgage from Orland to Harvey and the bond were signed by Freda Solomon as vice-president. The deed from Orland to Freda Solomon dated October 5, 1966 was signed for Orland by Freda Solomon as vice-president. (This deed was not offered into evidence but the court has examined the records in the Monmouth County Clerk's office to determine this fact.)

It is alleged on behalf of Harvey and Solomon that the tax sale certificate foreclosure proceedings were defective in not naming Lawrence Waln Price and Anna Louise Price properly, and in a deficiency of the inquiry made. See *Bonded Certificate Corp. v. Wildey,* 137 *N. J. Eq.* 564 (E. & A. 1946).

The threshold question is whether Harvey has standing to attack the foreclosure judgment. Of course, the rights of Solomon can rise no higher than Harvey's. She is obviously not a bona fide purchaser for value without notice. The Romanellis contend that the decision of the Supreme Court in *Bron v. Weintraub,* 42 *N. J.* 87 (1964), judgment on mandate affirmed 45 *N. J.* 1 (1965), bars Harvey. Harvey argues that *Bron* should be confined to its own facts and certainly not applied where those relying upon the tax foreclosure judgment have not expended sums of money to improve the property.

The basis of the decision in *Bron* was not a balancing of the equities but a matter of public policy. The Chief Justice stated, after discussing what public policy is:

"With respect to the factual pattern before us, no one disputes the right of the holders of existing interests to convey them to third persons if they wish. What is challenged is the legality of the intru-

sion into the scene by third persons who seek only to further their own interests rather than the interests already on hand. As we have pointed out, the policy of the statute is to support tax titles, a policy which overall is burdened by the conduct before us. The burden upon individuals situated as are the householders in this case is evident enough. These manifest hurts should not be tolerated unless it can be said that some other legitimate interest or advantage is served. We find none. We see no social value or contribution in the activities of Hudson. On the contrary, decent men must sense only revulsion in this traffic in the misfortunes of others.

We are not aware of any precedent precisely in point, although reference could appropriately be made to the established hostility toward so-called "heir-hunting." [42 N. J., at 95]

He further stated:

* * * We have no doubt the common conscience condemns the conduct of Hudson and Altomare as an undue interference with the rights of the householders. Hudson and Altomare having acquired the outstanding title under "circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same." 4 *Pomeroy, Equity Jurisprudence* (5th ed. 1941) § 1053, p. 119. The householders are equitably entitled to the property upon the payment of the sum of $400 plus simple interest from the date of the payment to the Weintraub heirs. [at 96]

The Legislature obviously agreed with the *Bron* holding. *N. J. S. A.* 54:5–89.1, having to do with persons claiming an interest in land sold for unpaid taxes subject to an action to foreclose the right of redemption, was amended by *L.* 1967, *c.* 149, which added:

No person, however, shall be admitted as a party to such action, nor shall he have the right to redeem the lands from the tax sale whenever it shall appear that he has acquired such interest in the lands for a nominal consideration after the filing of the complaint, except where such transferee is related by blood or marriage to, or who, because of other close or personal relationship with the transferor, would in normal course be a party to an instrument for little or no consideration, or where such party acquired his interest at a judicial sale."

Under *Bron v. Weintraub, supra,* neither Harvey nor Solomon may challenge the final judgment in the tax fore-

closure proceeding. They are intruders into the scene seeking only "to further their own interests rather than the interests already on hand."

■ ■ There is another aspect of the case. The present tax maps (adopted after the tax sale) of both Millstone and an adjoining township, Upper Freehold, indicate that about seven acres of the tract is in Upper Freehold. If, in fact, a portion of the tract was located in Upper Freehold, Millstone had no legal authority to assess taxes against it absent compliance with *N. J. S. A.* 54:4–25, which there was not. *Potter v. Orange,* 62 *N. J. L.* 192 (Sup. Ct. 1898); 16 *McQuillin, Municipal Corporations* (3d *ed. rev.* 1963), § 44.86, at 279; 64 *C. J. S., Municipal Corporations,* § 2003a, at 695 (1950). If it were proven that the taxes could not have been assessed against a portion of the land, the tax sale certificate and the tax foreclosure judgment would not pass any interest in such portion of the land. However, tax maps do not determine boundaries. The Legislature establishes boundaries. *N. J. Southern R. R. Co. v. Chandler,* 65 *N. J. L.* 173 (Sup. Ct. 1900); 2 *McQuillin, op. cit.,* § 7.03, p. 283; 37 *Am. Jur., Municipal Corporations,* § 16, p. 633 (1941). The boundaries of Millstone were established by "An act to set off a new township in the counties of Monmouth and Middlesex, to be called the township of Millstone," adopted February 28, 1844, *L.* 1844, p. 140. The following acts also affect the boundaries:

An Act to reannex a part of the township of Millstone, in the county of Monmouth, to the township of Monroe, in the county of Middlesex, adopted March 21, 1845, *L.* 1845, p. 148.

"An Act to extend the southern boundary line of the Township of Millstone, in the county of Monmouth," adopted March 6, 1846, *L.* 1846, p. 120.

"An Act to extend the northern boundary of the township of Millstone, in the county of Monmouth," adopted February 24, 1847, *L.* 1847, p. 86.

"An Act to incorporate the borough of Jersey Homesteads, in the county of Monmouth," adopted May 29, 1937, *L.* 1937, *c.* 106, p. 246.

■ From the acts referred to this court cannot determine if in fact any part of the land is not in Millstone. Since Harvey seeks to foreclose his mortgage upon lands which he claims were in Upper Freehold and which therefore did not pass by the tax sale certificate foreclosure, it was incumbent upon him to establish as a fact that a portion of the land was located in Upper Freehold. *Cf. Harris v. Barrett*, 75 *N. J. Eq.* 386 (Ch. 1909).

There was no competent proof offered at the trial as to the location of the boundaries of Millstone as set forth by the Legislature, or the location of the tract involved with relation to such boundaries. Harvey has failed to sustain his burden of proof that any portion of the land lies outside of Millstone.

Both the Romanellis and Solomon seek a judgment quieting their title to the premises. Solomon is proceeding in the nature of a suit *quia timet. Estate of Gilbert Smith, Inc. v. Cohen*, 123 *N. J. Eq.* 419 (E. & A. 1938). Solomon was not in possession. The Romanellis are proceeding under the statute *N. J. S. A.* 2A:62–1, *et seq.* The initial question is whether the Romanellis are in peaceable possession. They claim that they are in peaceable possession by reason of *N. J. S. A.* 2A:62–2, which provides:

If the lands are not, by reason of their extent or because they are wild, wood, waste, uninclosed or unimproved, in the actual peaceable possession of the owner or person claiming ownership, the owner or person claiming ownership in fee under a deed or other instrument, duly recorded in this state, who has paid taxes thereon and to whom or to whose grantors the taxes thereon have been assessed for 5 consecutive years immediately prior to the commencement of the action authorized by section 2A:62–1 of this title, shall, if no other person is in actual possession thereof, be presumed to be in peaceable possession thereof, and shall have all the rights and benefits of and be subject to all the provisions of this article and articles 2 and 4 of this chapter.

■■ It is doubtful that it could be argued that Mrs. Robbins was in possession before the foreclosure judgment. *Brewer v. Porch*, 53 *N. J.* 167 (1969). The foreclosure

judgment was entered December 26, 1963. Mrs. Robbins had been paying taxes on the premises and continued to pay the taxes until the conveyance to the Romanellis. From the date of the conveyance to the Romanellis to date, they have paid taxes. Their crossclaim was filed April 30, 1969. By reason of the fact that the lands were unimproved and that the taxes assessed against the property for the five consecutive years immediately before the filing of the cross-claim were paid by the Romanellis or their predecessor in title, they come within the terms of the statute. *Perlstein v. Pearce,* 12 *N. J.* 198 (1953). The jurisdictional elements being present, it was incumbent upon Solomon to establish her title. *Robinson-Shore Development Co. v. Gallagher,* 41 *N. J. Super.* 324, 333 (Ch. Div. 1956), opinion supplemented 43 *N. J. Super.* 430 (Ch. Div. 1957), aff'd 45 *N. J. Super.* 507 (App. Div. 1957), rev'd on other grounds 26 *N. J.* 59 (1958). In view of the holding that Solomon had no standing to attack the tax sale certificate foreclosure proceedings, she can only claim title to a portion of the lands not in the Township of Millstone. She has failed to sustain the burden of proof that any part of the lands are not within the territorial limits of the Township of Millstone.

The crossclaim of Solomon will be dismissed and there will be a judgment on the crossclaim of the Romanellis that defendant Solomon and plaintiff Harvey have no interest in the lands that are the subject matter of this suit, and that in respect to such lands, so far as relates to any claim by or on behalf of Solomon or Harvey, defendants Romanellis have an estate in fee simple.

██ Although Harvey paid $152.50 consideration for the deeds procured from the heirs, he was reimbursed by Orland. Therefore, Harvey has no claim to the $152.50 from the Romanellis. Orland has not appeared in this action. Solomon has made no claim to the $152.50. There is, therefore, no one before the court to whom the $152.50 need be reimbursed.

There will be a judgment in accordance with the views expressed herein, submitted by Mr. Orr within ten days in accordance with *R.* 4:42–1. Costs will be taxed in favor of the Romanellis and against the other parties.