LARIO, J.T.C.
This is an appeal by the taxpayer from a judgment of the Salem County Board of Taxation imposing upon her land, identified as Block 31, Lot 3, farmland assessment rollback taxes for three years, 1988, 1989 and 1990, pursuant to the provision of N.J.S.A. 54:4-23.8. The quantum of the rollback assessments and their resultant taxes are not in dispute; the sole objection is that the imposition of rollback taxes was improper.
The novel issue raised is: at what point during the year must a “change in use” from agricultural devotion occur in order to trigger the implementation of rollback taxes, pursuant to N.J.S.A. 54:4-23.8, upon land receiving the benefit of farmland assessment.
In pertinent part this statute provides:
When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of this act, is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as rollback taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of the change in use) and in *238 such of the two tax years immediately preceding, in which land was valued, assessed and taxed as herein provided.
If in the tax year in which a change in use of the land occurs, the land was not valued, assessed and taxed under this act, then such land shall be subject to roll-back taxes for such of the two tax years, immediately preceding, in which the land was valued, assessed and taxed hereunder. [N.J.S.A. 54:4-23.8]
The taxing district urges that rollback taxes can be assessed when a cessation of farming, or an application to a new use, occurs which is of short duration, even though, subsequently, there is a change back to farming activity. Contrarily, the taxpayer initially denies that her land ever ceased being devoted to agricultural qualification. Second, the taxpayer argues that, in order to ascertain whether cessation of farming sufficient to trigger rollback taxes has occurred, the use of the property for the entire calendar tax year must be considered. The property in question is approximately 35 acres consisting of wooded area, a pond and approximately 15 acres of tillable farmland. The property, which has no improvements, for many years was utilized as farmland. Plaintiff purchased the property in 1988 at which time it was devoted to the production of hay and for that year it had been assessed as farmland under the provisions of the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 et seq. Between the date of her agreement to purchase and the closing of title, plaintiff, with the permission of the seller, had the hay mowed and baled and, shortly after she took title, sold the crop for $703.12 to Sunrise Farms of Dillsburg, Pennsylvania.
Farmland assessment was applied for and granted for the tax year 1989. During 1989, hay again was grown, cut and baled. The cutting and baling of hay was performed by a friend of plaintiff who used a “bushhog,” which plaintiff owned, and some borrowed equipment. The crop was sold in June 1989, again to Sunrise Farms, for $660.50.
Farmland assessment, again, was granted for the tax year 1990. In July 1990, the taxpayer, on a couple of occasions spoke with a local farmer to ascertain whether he would be interested in farming the property for her. He stated he would check the ground and then contact her with his answer but he *239 never responded. A short time later, after this first farmer had failed to answer plaintiffs request, she contacted another farmer in the area, Myron Harvey, Jr., and inquired whether he would be interested in farming the land. Harvey advised her that he was familiar with the property and he agreed to farm the property.
Harvey, who testified he was engaged in farming for approximately 22 years, confirmed that, in July 1990, he was contacted by plaintiff to farm the land and that he had agreed to do so. He contracted to pay her an annual rental of $600 for the land. He testified that he farmed a lot of other ground in the area, some of which he also rented, and by reason thereof he was unable to start work on the subject property until the middle of September 1990 which is when he plowed it. At that time, he observed there had been farming activity on the land which contained a lot of red clover, fox-tail grass and some timothy. About October 1, 1990, he planted wheat on the property which did not become ready for harvesting until the following July at which time it was harvested and sold for $1,600.
The township’s tax assessor testified that about May 1990, as a result of his receipt of a building permit for a new dwelling on the property, he visited the property to observe what improvements had been made. Upon inspection he was unable to observe any construction whatsoever. He proceeded to the site where an old dwelling had existed, as evidenced by a photograph contained in his property record file, but the old dwelling was no longer there. At that time, he observed a Ford tractor with a bushhog attached to the back of it and weeds approximately three- to four-feet tall. It was his impression that there had been no farm activity for sometime. From his observation, however, he could not conclude whether any mowing of hay had been conducted in 1989.
On August 22, 1990, he denied plaintiff’s application for farmland assessment for the tax year 1991 concluding, based upon his inspection of the property in May and his observation of the property in the summer of 1990, that the property was *240 not actively devoted to farming. On the same date, he filed with the county board a rollback assessment application, pursuant to N.J.S.A. 54:4-23.8, for the tax years 1988, 1989 and 1990 based upon a change in use of the property. A hearing was conducted by the county board on September 13, 1991, at which time it issued its judgment granting a rollback assessment.
Plaintiff claims that her land clearly was devoted to agricultural use during the years 1988, 1989 and 1990 and that no change in use, as contemplated by the statute, occurred in the tax year 1990.
Defendant argues that N.J.S.A. 54:4-23.8 does not mandate that cessation of farming activity must continue for a full calendar year and urges that a period of 12 consecutive months constitutes the entire cycle of farm activity and since no farming activity had occurred, as alleged by it, from June 1989 until the county board’s hearing and judgment of September 13, 1990, a period in excess of 12 consecutive months, a change in use had occurred.
The taxing district further proposes that this court should not accept evidence of farming activity which occurred subsequent to the county board’s hearing and, at best, such evidence, if accepted, would merely indicate that the land was being returned to farming activity after it had been subjected to a change in use.
Initially to be addressed is defendant’s claim that this court should not consider facts that occurred after September 22, 1990, the date of the county board’s hearing. I conclude this argument is without merit. Upon appeal from a county board judgment, this tribunal’s jurisdiction is not as a court of review. We do not consider solely the evidence that was presented before the board. N.J.S.A. 2A:3A-4(b) directs: “The tax court shall hear all issues of fact and of law de novo.” A de novo hearing obligates the court to consider all competent evidence and not only that which was presented to the county board. Upon receipt of such evidence, this court must then make its independent findings of fact and conclusions of law. *241 Pantasote Co v. Passaic City, 100 N.J. 408, 417, 495 A.2d 1308 (1985).
In support of its position that a temporary cessation of farming constitutes a change in use, the taxing district cites Hamilton Township v. Lyons Estate, 8 N.J.Tax 112 (Tax Ct.1986), wherein this court reasoned that land mining, which does not meet the agricultural use test, even for a temporary period after which the land would ultimately return to agricultural use, constituted a change in use sufficient to trigger rollback taxes. The township’s reliance upon our holding in Hamilton Township is misplaced. Although counsel is correct that this court held therein that intended future use is not the test, there the change in use was determined to have occurred in the calendar year 1984, at which time, the agricultural devotion terminated and the land was converted to a mining excavation. The mining excavation continued to the end of the calendar year and beyond. In the instant case, there is no definite proof of a termination of agricultural use. Instead, there was agricultural activity at least beginning in the summer of 1990, which continued until July of the following year.
In ascertaining whether a change in use has occurred, the sole criterion is the actual use of the land. Id. at 120. Hence, the question posed is whether the use of the subject land changed during the year in question whereby it no longer was devoted to actual agricultural or horticultural use. N.J. Turnpike Auth. v. Washington Tp. 137 N.J.Super. 543, 350 A.2d 69 (App.Div.1975), aff’d o.b. 73 N.J. 180, 373 A.2d 652 (1977).
The first paragraph of the statute under review specifically delineates “the year of the change in use” as the “current tax year,” and, in the following paragraph, the year in which a change in the use of land occurs is identified as the “tax year.” “Generally, when a statute speaks of a year, twelve calendar months, and not lunar, months are intended. The year is either astronomical, ecclesiastical, or regnal, beginning on the first of January, or 25th of March, or the day of the sovereign’s *242 accession.” Black’s Law Dictionary (5 ed.) at 1448. The astronomical definition has been adopted by our Legislature. This is reflected in N.J.S.A. 1:1-2, which provides:
Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute, and in the Revised Statutes, shall have the meaning herein given to them.
Month; year ... the word “year” means a calendar year.
In interpreting this section of the statute, our Supreme Court observed, in Newman v. Fair Lawn 31 N.J. 279, 283-284, 157 A.2d 314 (1960), that: “A calendar year runs from January 1 to December 31. [citations omitted] This is unquestionably the meaning of ‘calendar year’ in N.J.S.A. 1:1-2.”
This interpretation of the Legislature’s meaning of “calendar year” in the rollback statute is reinforced by the Legislature’s further identifying the year as “tax year in which a change in use ... occurs.” N.J.S.A. 54:4-23.8; emphasis supplied. “Tax year” means the particular calendar year in which the general property tax is due and payable. See N.J.S.A. 54:4-8.10(g). Annual real property taxes become a lien as of the first day of the tax year and are due and payable in four quarterly installments: on the first days of February, May, August and November of the calendar year. N.J.S.A. 54:4-66.
 Accordingly, in order to ascertain whether a cessation of farming activity constitutes a change in use, and thus, triggers rollback taxes pursuant to N.J.S.A. 54:4-23.8, this court must consider the use of the land between January 1 and December 31 of the year in which the change is alleged to have occurred. It may not confine its consideration solely to a 12-month fiscal year, or to a period of time less than the full calendar year. The crucial determination to be made is, to what use was the property devoted during the full calendar year 1990. This court takes judicial knowledge of the fact that farming is not a continuous 365-day activity, but instead, in most cases, is a seasonal undertaking. It is unrefuted that, in *243 the summer of 1990, plaintiff was attempting to engage someone to farm the subject property; that in July she entered into a contract for the land to be farmed; and, in September and October the farmer-lessee plowed and seeded the land for a wheat crop which was cut and sold the following July. This activity unquestionably establishes that, in the second half of 1990, the land was devoted to agricultural use and that a change in use as contemplated by N.J.S.A. 54:4-23.8 did not occur during the 1990 calendar year.
This court recognizes that, under certain factual circumstances, a change in use sufficient to sustain a rollback conclusion may occur prior to the end of a calendar year, such as when farmland is physically converted to residential, commercial or industrial development whereby a physical change is clearly evident. Evidence of this type of change normally should be sufficient to impose a rollback assessment prior to the end of the calendar year. However, when the land, previously granted farmland status remains unimproved with no clearly visible change in use, it is prudent to wait until after December 31 to institute a complaint for assessment of rollback taxes. This procedure was implicitly recognized by the Legislature’s further providing that a rollback complaint may be filed in the year of the change in use or in the next succeeding year. N.J.S.A. 54:4-23.9 and -63.12.
The judgment of the county board of taxation is hereby reversed and the rollback assessments and taxes levied thereby are voided.