290 N.J. Super. 686 (1996)
676 A.2d 615
SUTTON WAREHOUSING, INC., PLAINTIFF-RESPONDENT,
v.
DIRECTOR, NEW JERSEY DIVISION OF TAXATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1996.
Decided May 31, 1996.
*688 Before Judges MICHELS, BAIME and VILLANUEVA.
Paul Tannenbaum, Deputy Attorney General, argued the cause for appellant Director, New Jersey Division of Taxation (Deborah T. Poritz, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Mr. Tannenbaum, on the brief).
Richard I. Miller argued the cause for respondent Sutton Warehousing, Inc. (Harold Leib, attorney; Mr. Leib and Mr. Miller, on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted defendant Director, New Jersey Division of Taxation (Director), leave to appeal from an order of the Tax Court of New Jersey that declared a Corporate Business Tax (CBT) Assessment upon plaintiff Sutton Warehousing, Inc. null and void by virtue of the entire controversy doctrine. At issue is whether the entire controversy doctrine can be utilized to dictate the way in which the Director administers the tax laws of New Jersey. We hold that it cannot. The application of the doctrine in the circumstances *689 of this case would improperly impede the Director's ability to administer his statutorily mandated responsibilities by vitiating the statutory provisions governing his authorization to issue CBT notices of assessment. We, therefore, reverse the order of the Tax Court and remand the matter for further proceedings.
Plaintiff, a New Jersey corporation, is engaged in the business of storing and distributing clothing products. In or about November 1989, plaintiff commenced the installation of a storage rack system and sprinkler system on its premises for the purpose of storing material which required the protection of fire sprinklers. The storage rack system, which was comprised of interconnected sections containing multiple shelving levels, was actually used to support and hang the sprinkler piping. The installation was completed in or about April 1990.
The Director audited plaintiff in the spring of 1992 for the return period from January 1989 through December 1991. As part of this audit, the Director audited plaintiff's CBT Returns for that audit period. On May 12, 1992, the Director issued a Notice of Assessment against plaintiff in regard to the construction and installation of the storage rack system, claiming that plaintiff was liable for $77,646.65 in outstanding sales and use tax, including penalties and interest. Plaintiff appealed from the Notice of Assessment and requested a hearing before the Conference Appeals Branch of the Division of Taxation. In its protest letter, plaintiff contended that the construction of the storage rack system constituted a capital improvement and, therefore, was exempt from taxation. The conference report concluded that the storage rack system was tangible personal property subject to sales tax. The Director issued a Final Determination Letter indicating that plaintiff was liable for $88,351.26, an amount which was later reduced by the Director to $64,888.03. Plaintiff then filed a complaint with the Tax Court, contesting the Director's final determination.
As part of discovery in the sales and use tax matter, the Director requested copies of all of plaintiff's federal and state tax *690 returns for the tax years including and subsequent to 1990, as well as all depreciation schedules attached to plaintiff's corporate tax returns. The Director requested the depreciation schedules in order to determine if plaintiff was depreciating its storage rack system as personal property or, as a capital improvement to real property. Depreciating the racks as personalty would be inconsistent with plaintiff's position before the Tax Court that the storage rack system constituted a capital improvement exempt from sales and use taxation.
Plaintiff's federal and state tax returns and the depreciation schedules attached to its New Jersey CBT returns revealed that the storage rack system was depreciated as personal property on a five-year schedule. The depreciation schedules further revealed that a certain sprinkler system (which was purchased at the same time as the storage rack system and installed with the storage rack system) was also depreciated as personal property on a five-year schedule. According to the Director, sprinkler systems, unlike storage rack systems, are generally treated as capital improvements, and thus, are depreciated over a period longer than five years.
At the conclusion of the trial and before post-trial briefs were submitted, the Director, based on the material uncovered during discovery, issued a second Notice of Assessment against plaintiff. The Director determined that plaintiff's depreciation of the sprinkler system created tax liability in the amount of $30,227, which included interest for the period from 1989 through 1993.
Plaintiff filed a complaint and order to show cause, requesting that the assessment made against it as reflected by the 1995 Notice of Assessment be quashed and that it be awarded counsel fees and costs. However, in so doing, plaintiff failed to comply with certain procedural rules. First, plaintiff's complaint was filed directly with the Tax Court judge even though Rule 8:3-1(a) provides that an action is commenced by filing a complaint with the Clerk of the Tax Court. Second, plaintiff's complaint was filed without payment of the $135 filing fee required by Rule 8:12(c)(3).
*691 Notwithstanding the clear and unambiguous provisions of N.J.S.A. 22A:5-1c that no proceeding shall be heard by the Tax Court unless the proper filing fees have been paid, the Tax Court issued an order to show cause why the Notice of Assessment relating to the final order of determination issued against plaintiff should not be quashed. The Director moved to discharge the order, contending no authority existed for plaintiff to proceed in a summary manner and that the challenge to the CBT assessment should be handled pursuant to the rules governing the practice in the Tax Court.
On the return date of the order to show cause, the Tax Court raised, sua sponte and without notice to the Director, the possibility of converting plaintiff's complaint and order to show cause into a post-trial motion in the pending sales and use tax case. However, this conversion did not take place. Rather, the Tax Court entered an order denying the Director's motion to discharge the order to show cause and declared the CBT assessment null and void. The Tax Court held that the entire controversy doctrine precluded the Director, after the conclusion of the sales and use tax case, from issuing the CBT assessment covering tax years 1989 through 1993. In so holding, the court reasoned that (1) the Director controls the timing of when an assessment issues; (2) the sprinkler system was intertwined with the purchase and installation of the storage rack system at issue in the sales and use tax case; and (3) the Director specifically examined plaintiff's CBT returns during its field audit of plaintiff and made depreciation an issue in the sales and use tax case. We granted the Director leave to appeal and we now reverse.
The objectives behind the entire controversy doctrine are (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322, 662 A.2d 523 (1995). The doctrine has evolved over time through the common law and *692 requires a court to adjudicate both equitable and legal issues arising from one underlying transaction, id. at 322, 662 A.2d 523, and furthers the twin goals of efficient judicial administration and fairness to litigants. Busch v. Biggs, 264 N.J. Super. 385, 396, 624 A.2d 1017 (App.Div. 1993). However, while the doctrine was designed to promote "a judicial policy that when a matter is presented to a judicial forum, the litigants should not fractionalize their claims to the detriment of the system[,]" Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 349, 476 A.2d 250 (1984) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 8, 462 A.2d 133 (1983)), the polestar for its application is judicial fairness. Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n, 243 N.J. Super. 624, 630, 581 A.2d 109 (App.Div. 1990).
"We appreciate the far reach accorded the entire controversy doctrine by Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989) and its more recent progeny, namely, Mortgageling Corp. v. Commonwealth Land Title, 142 N.J. 336, 662 A.2d 536 (1995); Mystic Isle Development Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523 (1995); Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494 (1995)." Perry v. Tuzzio, 288 N.J. Super. 223, 228, 672 A.2d 213 (App.Div. 1996). However, the boundaries of the entire controversy doctrine are not limitless. On the contrary, the doctrine is limited in that it requires that all parties and claims to an action be joined in one action "to the extent possible[.]" Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 26, 560 A.2d 1169. Additionally, the doctrine "does not apply to bar component claims that are unknown, unarisen, or unaccrued at the time of the original action." Mystic Isle Dev. Corp. v. Perskie & Nehmad, supra, 142 N.J. at 323, 662 A.2d 523. And, it does not apply unless "the party whose claim is being sought to be barred [has] had a fair and reasonable opportunity to have fully litigated that claim in the original action." Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991). In sum, "[t]he entire controversy doctrine does not demand monolithic *693 adjudications." Cogdell v. Hosp. Ctr. at Orange, supra, 116 N.J. at 27-28, 560 A.2d 1169 (quoting Crispin v. Volkswagenwerk, A.G., supra, 96 N.J. at 354-55, 476 A.2d 250 (Handler, J., concurring)).
With respect to the application of the entire controversy doctrine to the Tax Court, N.J.S.A. 2B:13-3a provides that "[t]he Tax Court, in all causes within its jurisdiction, and subject to law, may grant legal and equitable relief so that all matters in controversy between the parties may be completely determined." Based on this statute, the entire controversy doctrine has been applied in cases before the Tax Court. Union City Assocs. v. Union City, 247 N.J. Super. 249, 588 A.2d 1279 (App.Div. 1991); Fort Lee Borough v. Director, Div. of Taxation, 12 N.J. Tax 299 (1992), aff'd, 13 N.J. Tax 323 (App.Div.), certif. denied, 134 N.J. 563, 636 A.2d 521 (1993); see also N.J.S.A. 2B:13-3.
Against this backdrop, we are satisfied that the entire controversy doctrine does not apply here to nullify and declare void the CBT assessment issued against plaintiff. First, the CBT assessment was not a "matter in controversy between the parties" at the time of the sales and use tax trial. Under the relevant statutory scheme, the cause of action regarding the CBT assessment had not arisen in time to have been joined in the sales and use tax case prior to the May 3, 1995 trial and even if it had arisen prior to the trial, the Director could not have asserted the CBT assessment as a defense or counterclaim in the sales and use tax case. The statute governing the issuing of notices of assessment by the Division of Taxation places no limits upon the Director's ability to issue additional notices of assessment. Specifically, N.J.S.A. 54:49-6 provides:
a. After a return or report is filed under the provisions of any State tax law, the director shall cause the same to be examined and may make such further audit or investigation as he may deem necessary, and if therefrom he shall determine that there is a deficiency with respect to the payment of any tax due under such law, he shall assess the additional taxes, penalties, if any, pursuant to any State tax law or pursuant to this subtitle, and interest at the rate of three percentage points above the prime rate due the State from such taxpayer assessed for each month or fraction thereof, compounded annually at the end of each year, from the date the *694 tax was originally due until the date of actual payment, give notice of such assessment to the taxpayer, and make demand upon him for payment.
b. No assessment of additional tax shall be made after the expiration of more than four years from the date of the filing of a return; provided, that in the case of a false or fraudulent return with intent to evade tax, or failure to file a return, the tax may be assessed at any time. If a shorter time for the assessment of additional tax is fixed by the law imposing the tax, the shorter time shall govern. If, before the expiration of the period prescribed herein for the assessment of additional tax, a taxpayer consents in writing that such period may be extended, the amount of such additional tax due may be determined at any time within such extended period. The period so extended may be further extended by subsequent consents in writing made before the expiration of the extended period. For purposes of this subsection, a return filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.
Under the clear and explicit language of N.J.S.A. 54:49-6, the Director is given four years to examine and audit individual tax returns filed by a taxpayer for each year and to assess additional taxes, if any, with respect to such returns. The focus is on the tax returns rather than the taxpayer. As long as the Director complies with the time limitations set forth by the Legislature, the Director may issue as many notices of assessment as is deemed necessary to accomplish the objectives of our taxing statutes. Once an assessment is made, a taxpayer may assert a judicial claim regarding that notice of assessment.
The procedure for challenging a notice of assessment is set forth in N.J.S.A. 54:49-18 which, in pertinent part, provides:
a. If any taxpayer shall be aggrieved by any finding or assessment of the director, he may, within 90 days after the giving of the notice of assessment or finding, file a protest in writing signed by himself or his duly authorized agent, certified to be true, which shall set forth the reason therefor, and may request a hearing. Thereafter the director shall grant a hearing to the taxpayer, if the same shall be requested and shall make a final determination confirming, modifying or vacating any such finding or assessment. The filing of a protest shall stay the right of the director to collect the tax in any manner if the taxpayer shall furnish security of the kind and in the amount determined pursuant to subsection b. of this section until 90 days after final determination by the director. The time for appeal to the Tax Court pursuant to subsection a. of R.S. 54:51A-14, enacted pursuant to section 1 of P.L. 1983, c. 45, shall commence from the date of the final determination by the director.
*695 Thus, if the taxpayer has filed a written protest and has requested a hearing, he may have a conference with a representative from the Division's Conference and Appeal Branch. Subsequent to the conference, the Director will issue a final determination which will affirm, modify or vacate the assessment under review. Once issued, the taxpayer may appeal the final determination by filing a complaint with the Tax Court. See N.J.S.A. 54:49-18; N.J.S.A. 54:51A-13; see also R. 8:3-1(a). The Tax Court then determines all issues of fact and law de novo. N.J.S.A. 2B:13-3b.
Based upon the procedural structure established by our applicable statutes and administrative code, the Director could not properly have joined the CBT assessment in the pending sales and use case prior to the May 3, 1995 trial because there was no CBT cause of action or controversy between the parties prior to the issuance of the June 21, 1995 Notice of Assessment. The Director could not have asserted the assessment as a defense or a counterclaim because to do so would have violated the plaintiff's statutory right to protest the assessment with the Director prior to filing an appeal with the Tax Court. Stated differently, under the statutory scheme, prior to the issuance of an assessment, there was simply no controversy between plaintiff-taxpayer and the Director.
Secondly, the CBT assessment arising out of plaintiff's depreciation of its sprinkler system did not constitute a defense to plaintiff's challenge of the sales and use tax assessment in the installation of its storage rack system. The Director could not have asserted the CBT depreciation assessment on plaintiff's sprinkler system as a defense to plaintiff's challenge to the sales and use tax assessment on its storage rack system because the CBT assessment on the sprinkler system involved a different tax and item of property than the sales and use tax assessment on the storage rack system. As the Director correctly noted, asserting the CBT assessment as a defense would not defeat plaintiff's claim that its purchase of the storage rack system was a capital improvement and, therefore, exempt from sales and use tax.
*696 Finally, and perhaps most significantly, plaintiff's sales and use tax and CBT assessment claims did not arise from one underlying transaction. Rather they arose from two separate and independent taxable events: the purchase of the storage rack system which gave rise to the sales and use tax assessment under N.J.S.A. 54:32B-3 and N.J.S.A. 54:32B-6 and plaintiff's privilege of doing business and employing or owning capital or property as a corporation in this state under N.J.S.A. 54:10A-2 which gave rise to the CBT assessment. Thus, while plaintiff may argue that the sales and use tax liability on the storage rack system and the CBT depreciation liability on the sprinkler system arose from one underlying transaction, to wit, the purchase and installation of the storage rack and sprinkler systems, such is not the case. These were separate taxable events.
Additionally, we must not lose sight of the fact that the statutory scheme as enacted by our Legislature is necessary and proper. Tax revenues are absolutely essential for the government to exist and function. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-25, 495 A.2d 1313 (1985); WHYY, Inc. v. Borough of Glassboro, 50 N.J. 6, 11, 231 A.2d 608 (1967), rev'd on other grounds, 393 U.S. 117, 89 S.Ct. 286, 21 L.Ed.2d 242 (1968); Peoples Express Co., Inc. v. Director, Div. of Taxation, 10 N.J. Tax 417, 433 (Tax Ct. 1989). In instances where a return is timely filed and no willful attempt to evade taxes exists, the Legislature has provided the Director with four years to issue an assessment. N.J.S.A. 54:49-6. There is nothing in the statutory scheme to suggest that this time period is reduced when the Director audits a taxpayer and does not include, for whatever reason, an assessment for a particular tax in a notice of assessment which results from the order. Had the Legislature so desired, it could have enacted a statutory scheme whereby the Director is required to examine all of the taxpayer's returns for a given period and then assess all additional taxes in one notice of assessment.
Similarly, the Legislature could have required that the Director collect tax deficiencies or delinquencies by filing complaints in the *697 Tax Court, in which case an argument could be made that the entire controversy doctrine would require the Director to assert all potential claims against the particular taxpayer in one proceeding. However, the statutory scheme currently in place does not in any way contemplate that the Director must examine all of the taxpayer's returns at one time or that the Director must issue only one notice of assessment to a taxpayer for a given return period. Consequently, the CBT assessment was issued in compliance with the requisite statutory limitations and was properly authorized. N.J.S.A. 54:49-6.
We are thus satisfied that the Tax Court erred when it employed the entire controversy doctrine to declare the CBT assessment null and void. In our view, in light of the aforementioned statutory scheme and established tax procedure, the application of the doctrine in this case was inappropriate and unlawfully impeded the Director's ability to carry out his statutorily mandated responsibilities of administering the tax laws of this state. While courts undoubtedly have the authority to require that all parties and claims be joined in one action to the extent possible, the entire controversy doctrine does not give courts the authority to require an agent of the executive branch of state government to carry out his responsibilities in a manner inconsistent with the legislative mandate under the separation of powers doctrine of our Constitution. See N.J. Const. Art. III ¶ 1. As the Supreme Court has so aptly observed on many occasions: "courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable." See New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562-63, 384 A.2d 795 (1978). In sum, "[t]he judiciary has no power to devise tax programs or to qualify the existing legislative mandate with a judge's private view of what is just or sensible." Village of *698 Ridgefield Park v. Bergen County Bd. of Taxation, 31 N.J. 420, 431, 157 A.2d 829 (1960).
Accordingly, the order of the Tax Court declaring the CBT assessment null and void is reversed. The assessment is reinstated and the matter is remanded to the Tax Court for further proceedings consistent with the applicable statutory scheme and rules of court. We do not retain jurisdiction.