KUSKIN, J.T.C.
This is an appeal of an assessment for roll-back taxes imposed pursuant to N.J.S.A. 54:4-23.8 on one acre of property in Sparta Township for the tax years 1995, 1994 and 1993. This statute provides in relevant part:
*323 When land which is in agricultural or horticultural use and is being valued, assessed and taxed under the provisions of [the Farmland Assessment Act of 1964, as amended], is applied to a use other than agricultural or horticultural, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes, in an amount equal to the difference, if any, between the taxes paid or payable on the basis of the valuation and the assessment authorized hereunder and the taxes that would have been paid or payable had the land been valued, assessed and taxed as other land in the taxing district, in the current tax year (the year of change in use) and in such of the 2 tax years immediately preceding, in which the land was valued, assessed and taxed as herein provided.
Such one acre was able to qualify for farmland assessment because N.J.S.A. 54:4-23.18[1] permits the combining of contiguous acreage in adjoining municipalities for purposes of satisfying the five-acre minimum area requirement imposed by the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 through -23.23.
Plaintiffs are the owners of 9.086 acres of land, of which 1.44 acres are located in Sparta Township and 7.646 acres are located in adjoining Lafayette Township. For tax years 1993, 1994 and 1995, the Sparta Township tax assessor determined that one acre of the 1.44 acres in Sparta, when combined with four contiguous acres of the Lafayette Township land, qualified for farmland assessment. During 1995, however, the Sparta assessor learned that, for 1995 (and for 1991 through 1994), plaintiffs’ four acres in Lafayette Township were denied farmland assessment qualification in that Township. Based solely on such denial in Lafayette for 1995, the Sparta assessor (pursuant to N.J.S.A. 54:4-23.9 and N.J.S.A. 54:4-63.13) filed a complaint with the Sussex County Board of Taxation (“County Board”) seeking imposition of the assessment for roll-back taxes which is the subject of this appeal. The County Board issued its judgment imposing the assessment on September 19,1995.
The issue presented is a narrow one — whether the denial of farmland assessment qualification to adjoining property in a dif *324 ferent municipality constitutes a change in use of the subject property under N.J.S.A. 54:4-23.8, when a combination of the subject property and the adjoining property is required to satisfy the statutory five-acre minimum for farmland assessment qualification.
Plaintiffs contend that their said five acres (one acre in Sparta and four acres in Lafayette) were actively devoted to agricultural use, within the meaning of N.J.S.A. 54:4-23.2 to -23.4 and N.J.S.A. 54:4-23.6, during the tax year 1995 as well as tax years 1994 and 1993, that no change in use, as contemplated by N.J.S.A. 54:4-23.8, occurred during 1995, and that the denial of farmland assessment qualification in Lafayette for 1995 neither required nor permitted a roll-back tax assessment in Sparta.
' Defendant has three responses. Firstly, defendant asserts that an assessment for roll-back taxes in Sparta was obligatory once the Lafayette Township assessor denied farmland assessment to plaintiffs’ four acres in Lafayette because, under N.J. Const, art. VIII, § 1, ¶ 1(b) (requiring, in relevant part, the Legislature to enact laws providing for assessment based on agricultural value for land “not less than 5 acres in area, which is determined by the assessing officer of the taxing jurisdiction to be actively devoted to agricultural ... use”) and Harvey v. Orland Properties, Inc., 108 N.J.Super. 493, 499, 261 A.2d 708 (Chan.Div.1970), aff'd, 118 N.J.Super. 104, 286 A.2d 711 (App.Div.1972) (holding that a municipality “ha[s] no legal authority to assess taxes” on property outside its boundaries), the Lafayette assessor was the only person having the authority to determine whether property within Lafayette Township qualified for farmland assessment. Permitting plaintiffs’ Sparta property to continue to qualify for farmland assessment, based upon the inclusion of four non-qualified acres in Lafayette Township, would, in the defendant’s- view, allow the Sparta assessor to usurp authority vested exclusively in the Lafayette assessor. Secondly, the defendant contends that plaintiffs’ appeal constitutes an impermissible collateral attack on the Lafayette Township assessor’s determination that the four-acre portion of plaintiffs’ property located in that Township did not qualify for *325 farmland assessment. Thirdly, defendant urges that this appeal violates the entire controversy doctrine as articulated in Prevratil v. Mohr, 145 N.J. 180, 678 A.2d 243 (1996) because plaintiffs are improperly seeking to segregate the issue of farmland assessment qualification for their Sparta land from the inherently related issue of the assessment status of their property in Lafayette Township.
I conclude that the denial of farmland assessment to the four-acre portion of plaintiffs’ property located in Lafayette Township does not require or permit the imposition of an assessment for roll-back taxes on the one-acre portion located in Sparta Township, because: a) such denial does not, in itself, constitute a change in use under N.J.S.A. 54:4-23.8; b) whether property qualifies for farmland assessment and whether a change in use has occurred must be determined independently by each assessor, and, therefore, the denial of farmland assessment qualification in Lafayette Township is not binding upon, nor should it have any influence upon, the Sparta assessor, the county board of taxation or this court; and c) diming 1995, the five-acres in question were, in fact, not “applied to a use other than agricultural” as contemplated by N.J.S.A. 54:4-23.8.
A change in use which warrants an assessment of roll-back taxes must be a change in actual use. “In ascertaining whether a change in use has occurred, the sole criterion is the actual use of the land.” Rossi v. Upper Pittsgrove Tp., 12 N.J.Tax 235, 241 (Tax 1992). A change in title or possession will not trigger a rollback assessment. New Jersey Turnpike Auth. v. Washington Tp., 137 N.J.Super. 543, 551, 350 A.2d 69 (App.Div.1975), aff'd per curiam 73 N.J. 180, 373 A.2d 652 (1977). Even failure to qualify for farmland assessment (for reasons such as failure to file a timely application or failure to satisfy the statutory minimum income requirements) will not permit an assessment for roll-back taxes if the land remains in agricultural use. South Brunswick Tp. v. Bellemead Dev. Corp., 8 N.J.Tax 616, 620-21 (Tax 1987).
*326 The determination by the Lafayette tax assessor that plaintiffs’ four acres in that Township did not qualify for farmland assessment in 1995 was not the equivalent of a change in “the actual use of the land.” The defendant presented no proofs as to why the Lafayette assessor refused to grant farmland assessment qualification for 1995,1994,1993 or 1992. Plaintiffs’ 1991 application for such qualification was denied on the grounds that “[n]o activity related to agriculture noticed in the last year.” The County Board affirmed such denial. Even if the Lafayette assessor’s denial of farmland assessment qualification for 1995 was based on a finding that plaintiffs’ four acres in Lafayette Township were not actually used for agricultural purposes, and even if plaintiffs failed to appeal, or unsuccessfully appealed the denial, the imposition of a roll-back tax assessment in Sparta Township would not be justified unless plaintiffs’ five acres of land were in physical fact “applied to a use other than agricultural” and the Sparta tax assessor proved such change in use before the County Board or this court. See Miele v. Jackson Tp., 11 N.J.Tax 97, 99 (App.Div.1989) (holding that the tax assessor has the burden of proof to establish that a change in actual use has occurred).
The statutes and regulations relating to local property tax assessments impose upon the assessor of .each municipality an obligation to reach an independent conclusion as to the proper assessments on property located within the municipality. N.J.S.A. 54:4-23, for example, requires a tax assessor to “determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1” of the pre-tax year. N.J.S.A. 54:4-35 requires the assessor to “determine his taxable valuations of real property as of October 1 in each year . . . .” N.J.S.A. 54:4r-36 requires that assessor to submit an annual affidavit to the county board of taxation accompanying the tax list stating that “I, ... as assessor of, ... do swear (or affirm)” that the ... list [is complete], ... that such property has been valued ... at its taxable value and I have allowed only such exemptions as are prescribed by law.”
*327 N.J.A.C. 18:15-2.12(e) authorizes an assessor to disapprove an application for farmland assessment for woodlands “in accordance with his determination as to whether the property is otherwise qualified for farmland assessment” even after the Commissioner of the Department of Environmental Protection has certified that the applicant has satisfied the reporting requirements of N.J.A.C. 18:15-2.7. N.J.A.C. 18:15-3.5(a) permits an assessor to “require the submission of such additional proof as he[2] deems necessary to establish the right of an applicant to farmland assessment.” Even when a municipal-wide revaluation is performed by an independent appraisal company pursuant to N.J.A.C. 18:12-4.1 to -4.11, it is the assessor who must determine the assessments based upon the revaluation appraisals.
[A] revaluation firm’s appraisal, in and of itself, has absolutely no legal status. The revaluation firm’s value estimate has legal significance only if it becomes an assessment. This is true because a revaluation firm serves merely in an advisory capacity for its principal, the tax assessor.
[Calton Homes, Inc. v. West Windsor Tp., 15 N.J.Tax 231, 235 n. 2 (Tax 1995) (citations omitted).]
The New Jersey courts have consistently recognized the importance of independent judgment by tax assessors. In 1872, the then-Supreme Court described “the chief duty enjoined upon the assessor” as “the making up by him of an independent judgment as to the actual value of the property to be assessed . . . .” Keeler v. Tindall, 36 N.J.L. 97, 98 (Sup.Ct.1872). Similarly, in Arace v. Town of Irvington, 75 N.J.Super. 258, 183 A.2d 104 (Law Div.1962), the court held that a municipal governing body cannot interrogate an assessor as to assessment methodology because: “In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment.” Id. at 269, 183 A.2d 104. See also Ream v. Kuhlman, 112 N.J.Super. 175, 190, 270 A.2d 712 (App.Div.1970) (noting the “paramount importance that the integrity of [the assessor’s] office be in no way diluted by local interference”).
*328 Although none of the foregoing statutes, regulations and court decisions deals directly with the relationship between assessors, the consistent emphasis on the assessor’s independence . requires the conclusion that one assessor can not, may not, and should not be influenced or bound by the judgment of another assessor. Defendant acknowledges the independence of each assessor and argues that this very independence obligates the Sparta tax assessor to respect the decision of the Lafayette tax assessor as to qualification for farmland assessment of plaintiffs’ four acres in Lafayette Township. In support of this argument, defendant cites N.J.S.A. 54:4-25 which provides:
When the line between taxing districts divides a tract of land, each part shall be assessed in the taxing district where located, unless the governing body of one of the taxing districts shall by resolution request that the entire tract be assessed by the adjoining taxing district in which a portion of the tract is located.
This statute clearly contemplates that each assessor will act independently in imposing an assessment on the portion of the property located in that assessor’s taxing district.
The statute does not, however, preclude an assessor from considering the overall value of the property and then allocating a portion of that value to the portion of the property within the assessor’s taxing district. For example, if a garden apartment complex straddled the boundary line between two municipalities and was operated as a single economic unit with no separate accounting for the income and expenses attributable to apartment units in each municipality, the assessor in each municipality would determine a value for the entire complex based upon integrated income and expense statements, Parkway Village Apartments Co. v. Cranford Tp., 108 N.J. 266, 270-76, 528 A.2d 922 (1987), and then allocate an appropriate portion of that value to the units within the assessor’s municipality. See Mobil Oil Corp. v. Greenwich Tp., 9 N.J.Tax 123, 127 (Tax 1986) (holding that, where “improvements of a single economic unit span more than one lot, an assessor is obligated to first ascertain the total assessable value of the total complex, which he then allocates to each lot . . . .”). Thus, each assessor, for purposes of determining an assessment within his or her taxing district, would determine and consider the value of property outside that district. Each assessor would not, however, be assessing property outside his or her taxing district, *329 and each would not be bound by the valuation determination of the other.
Here, pursuant to N.J.S.A. 54:4-23.18, the Sparta tax assessor, in order to determine the proper assessment on plaintiffs’ one acre within the taxing district, determined and considered the use of the plaintiffs’ contiguous four acres outside the taxing district. The process is directly analogous to that described above with respect to N.J.S.A. 54:4-25. The Sparta assessor was not determining a Lafayette assessment and was not, therefore, usurping the exclusive authority of the Lafayette assessor to determine assessments in that municipality. The Lafayette assessor had the right and authority to disagree with the conclusion of the Sparta assessor, in which event, as actually occurred here, plaintiffs’ four acres located in Lafayette Township would be denied qualification for farmland assessment even though their one acre in Sparta was granted such qualification. This disagreement between assessors did not constitute a violation by either of the authority of the other, or a violation of N.J. Const, art. VII, § 1, ¶ 1(b), because each assessor was determining the assessment only on property located in his or her taxing district.
Permitting the Sparta assessor to be bound, or even influenced, by the judgment of another assessor would be equivalent to permitting comparable assessments to be used to establish the proper assessment on property under appeal. In Greenwald v. Metuchen Bor., 1 N.J.Tax 228, 233 (Tax 1980), Judge Andrew described the flaw in reliance on comparable assessments: “The assessments to which plaintiffs point may well be erroneously made as the result of a mistake or misjudgment.” See also Phillips v. Hamilton Tp., 15 N.J.Tax 222, 225 (App.Div.1995) (concluding that evidence of other assessments in the surrounding neighborhood did not constitute relevant evidence). Here, the assessment for 1995 in Lafayette Township to which defendant points “may well [have been] erroneously made as the result of a mistake or misjudgment.”
Sparta acknowledges that its assessor made no independent determination that, during 1995, a change occurred in the actual *330 use of plaintiffs’ five acres. The Sparta assessor, therefore, had no proper basis for filing a complaint to the County Board under N.J.S.A. 54:4-23.9 and N.J.S.A. 54:4-63.13, and the County Board had no proper basis for entering judgment imposing an assessment for roll-back taxes. Furthermore, I find, based on the undisputed proofs at trial, that such five acres were in fact used for hay farming throughout 1995 and no change in actual use occurred during the year. The assessment for roll-back taxes was, therefore, improperly imposed.
The preceding findings and conclusions provide the basis for disposition of defendant’s legal contentions as to collateral attack on the Lafayette assessment and violation of the entire controversy doctrine. Because each assessor must act independently of the other, and because, in so acting, the Sparta assessor was not in any way determining a Lafayette assessment, this appeal does not constitute a collateral attack on the Lafayette assessment. The integrity of that assessment is not, and cannot be, impaired by the result of this appeal.
Finally, because each assessment is discrete, a determination by the Lafayette assessor is irrelevant to an appeal of plaintiffs’ Sparta assessment, and a determination by the Sparta assessor is irrelevant to an appeal of plaintiffs’ Lafayette assessment. The Lafayette Township 1995 regular assessment and the Sparta Township 1995, 1994 and 1993 assessments for roll-back taxes are in no sense different aspects of the same controversy, and the entire controversy doctrine is inapplicable. See Sutton Warehousing, Inc. v. Director, Div. of Taxation, 290 N.J.Super. 686, 696, 676 A.2d 615 (App.Div.1996) (refusing to apply the entire controversy doctrine to claims which “arose from two separate and independent taxable events”). Lafayette Township is also not a necessary party to this appeal because, based on the foregoing analysis, this court can accord complete relief between the present parties as contemplated by R. 4:28-1(a)(1).
Judgment will be entered setting aside the subject assessments for roll-back taxes and restoring the farmland assessment qualifi *331 cation of the subject property for each of the years 1993,1994 and 1995.

 This statute provides: “Where contiguous land in agricultural or horticultural use in one ownership is located in more than one taxing district, compliance with the 5 acre minimum area requirement shall be determined on the basis of the total area of such land and not the area which is located in the particular taxing district.”

 It is unfortunate and inappropriate that the cited regulations and statutes have not been amended to include gender-neutral or gender-inclusive language.