75 N.J. Super. 258 (1962)
183 A.2d 104
LEO ARACE, PLAINTIFF,
v.
THE TOWN OF IRVINGTON, EDWARD J. MC KENNA, JOHN R. MARTIN, VITO A. MIELE, J. ELMER HAUSMANN AND WILLIAM E. LOVELL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 20, 1962.
*260 Mr. Thomas E. Durkin, Jr., attorney for plaintiff.
Mr. Matthew Krafte, attorney for defendants.
GLICKENHAUS, J.C.C. (temporarily assigned).
This is an action in lieu of a prerogative writ, brought by plaintiff Leo Arace, tax assessor of the Town of Irvington, against the town and its governing body, which consists of five commissioners, whereby the plaintiff seeks in the first count to enjoin a certain investigation of assessment practices in said town, authorized and financed by virtue of certain resolutions adopted by the Irvington commissioners on June 19, 1961. The second count seeks to establish that the adoption of the resolution for the emergency appropriation of funds to finance the investigation was an ultra vires act and therefore null and void. In the third count plaintiff seeks to enjoin the investigating committee from questioning *261 him as to his method or methods of assessing property.
The case arose out of the following facts: There was a general revaluation of assessments in the Town of Irvington for the year 1960, and assessments were presumably equalized throughout the town. In 1961 a great many taxpayers complained that after their tax assessments were increased in 1960, to effect the equalization of assessments they were again increased in 1961. In view of the vast number of complaints from taxpayers, the governing body, on June 19, 1961 adopted the following resolution:
"WHEREAS, an emergency has arisen with respect to the unusual and excessive tax assessments widespread among the realty properties within this community, and
WHEREAS, this board has been inundated by numerous complaints of citizens respecting raises of tax assessments, and
WHEREAS, a cursory examination and investigation reveals extensive changes of assessments directly following a completed revaluation program, and
WHEREAS, such alteration of current revaluation figures should be the subject of an investigation and report,
NOW THEREFORE,
BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE TOWN OF IRVINGTON,
1. Mayor William E. Lovell is hereby appointed as a committee to conduct an investigation of current assessment practices, and in connection therewith to hire necessary persons and to assist and retain qualified persons or forms [sic] to render opinion, and to report to this board from time to time, the progress of said investigation.
2. That the Director of Revenue and Finance, the Comptroller, the Assessor and such other person or persons having data pertaining to the realty assessments of the Town of Irvington be and are hereby directed to make available such records for investigation as are sufficient for this inquiry.
On the same date the governing body also adopted an emergency resolution appropriating the sum of $15,000 to cover the cost of said investigation.
*262 On or about July 15, 1961 plaintiff was served with a "written notice" that an investigation would be conducted from July 24 through August 2, 1961, at the Irvington town hall. The notice directed him to be present and to have available for production and inspection the books of his office. On or about July 20, 1961 the plaintiff was served with a subpoena issued by defendant, Mayor William E. Lovell, commanding him to appear and to give testimony at said investigation.
Sometime prior to July 24, 1961 the plaintiff served the defendants with a notice of motion returnable July 24, 1961, by which he would seek an order restraining them from conducting said investigation.
On August 3, 1961 the court entered a preliminary injunction restraining the defendants from interrogating the plaintiff as to the amounts of the individual assessments made by him and as to the methods used by him in making the assessments, but permitting the plaintiff to be interrogated upon other matters. In arriving at this determination the court was of the opinion that the sole method provided by law for a review of the calculations made by the assessor in the valuation of real and personal property was by way of appeal to the county board of taxation. This order is still in effect.
The plaintiff asserts that he is the tax assessor of the Town of Irvington, having been appointed on June 30, 1960 by the Director of the Department of Revenue and Finance for a term of four years, by virtue of N.J.S.A. 40:46-6.2. He contends that the subject matter of the investigation is improper because it attempts to investigate current assessment practices, that is, the practice employed by him in valuing property. He further contends that he is bound to assess all property at true valuation; that if the alleged valuations are too high, landowners have the right to appeal to the county tax board, and conversely, that if the alleged valuations are too low, the town has the right to appeal to the county tax board. It is the plaintiff's *263 position that even though he is appointed by the town, he performs the functions of his office independently of the town and owners of assessed property; that if the defendants assert that he is acting improperly or is the subject of any disciplinary action, they lack jurisdiction because all such procedures lie solely with the Director of the Division of Taxation and the director of his department.
The defendants deny that the plaintiff was the duly appointed tax assessor of the Town of Irvington. This denial is based upon the alleged failure of the plaintiff to take, subscribe to, and file such oath of office as is provided for in R.S. 40:46-19, within 30 days after the commencement of his term of office, thus vacating his office. The above statute was in effect at the time of plaintiff's appointment, but has since been repealed by L. 1961, c. 5, effective January 1, 1962. It is the defendants' contention that the municipality has inherent power under the Walsh Act to conduct this investigation, and that the emergency appropriation was properly made under N.J.S.A. 40:2-31.
The controversy presents for determination the following questions:
1. Does the governing body have the right to appoint a committee to investigate current assessment practices in the Town of Irvington?
2. Does the governing body have the right to adopt an emergency resolution appropriating a fund to pay the cost of such an investigation?
3. Does the committee appointed by the governing body have the right to examine the tax assessor as to his methods in valuating property and making assessments?
4. Did the plaintiff fail to file his oath of office as required by statute within the time prescribed by law and thereby forfeit his right to act as tax assessor of the Town of Irvington?
The matter duly came on for trial before this court and the testimony of the witnesses produced by the parties was taken.
*264 The first question presented for determination by the court, as stated above, is whether the governing body has the power to appoint a committee to investigate the current assessment practices in the Town of Irvington. N.J.S.A. 54:3-21, provides that:
"* * * a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may * * * appeal to the county board of taxation by filing with it a petition of appeal * * *"
N.J.S.A. 54:3-22, provides that:
"The board * * * shall summarily hear and determine the appeal, and revise and correct the assessment in accordance with the value prescribed by law * * *"
By the above statutes the Legislature recognized that assessments in the appealing taxing district might be too high as compared with assessments in other taxing districts, or that the assessments in other taxing districts might be too low as compared with assessments in the appealing district, in either of which cases the appealing district might feel discriminated against. As a condition precedent to the right of appeal the municipality must designate in the petition of appeal the particular assessments which it feels are discriminatory. N.J.S.A. 54:3-21.
One proper method by which a municipality could determine whether it has been subject to discrimination because of certain tax assessments would be to conduct an investigation of the current tax assessments. Such discrimination might be revealed through an investigation of alleged excessive increases and decreases of real property assessments within the municipality. Furthermore, the defendant municipality did in 1960 expend, pursuant to N.J.S.A. 40:50-9, approximately $100,000 for a complete revaluation of real property within the municipality for the use of the local assessor. An investigation might tend to disclose that the *265 revaluation was improper, or that it was properly made but changing conditions and circumstances rendered it, in many instances, useless as a guide for the assessor, or that conditions and circumstances have not changed and thus an appeal from the valuation set by the assessor was indicated in the public interest. It should also be noted that in addition to the right of appeal, the municipality may desire to conduct an investigation to gather evidence to justify lodging a complaint with the Director of the Division of Taxation, who, under N.J.S.A. 54:1-26, has the authority to order a reassessment of all or part of the property in the taxing district. It is my opinion, based on the aforementioned statutes, that the governing body has the requisite interest necessary to conduct this investigation.
In view of the above holding that the municipality has the power to investigate, there arises a presumption that the investigation is being conducted in good faith even though the exact use of the end product of the investigation has not been made clear. Eggers v. Kenny, 15 N.J. 107 (1954).
This brings us to a consideration of the second question raised, namely, does the governing body have the right to adopt an emergency resolution appropriating a fund to pay the cost of the investigation?
Having already adopted its budget for the fiscal year, the governing body voted for the said appropriation pursuant to N.J.S.A. 40:2-31, which provides that:
"* * * Such an appropriation shall be made only to meet a pressing need for public expenditure, to protect or promote the public health, safety, morals or welfare or to provide for temporary housing or relief of the poor prior to the ensuing budget year."
It cannot be denied that a swift correction of alleged unequal distribution of the tax burden is desirable. If such inequities exist, they should be adjusted as soon as possible. Also the time for appeal is limited. Therefore, I find that the alleged wide discrepancy in tax assessments *266 created a sufficient "pressing need" under the statute to authorize the governing body to raise the necessary monies for the investigation by means of an emergency appropriation.
This brings us to the third question raised by this proceeding, namely, does the committee appointed by the governing body have the right to examine the tax assessor as to his practices in valuating property and making assessments?
The power of taxation is exclusively a legislative function. State Board of Assessors v. Central R.R. Co., 48 N.J.L. 146, 308 (E. & A. 1886). Therefore, when assessing property, the assessor performs a governmental function and acts as an agent of the Legislature. Ridgefield Park v. Bergen County Board of Taxation, 61 N.J. Super. 170 (Law Div. 1960), reversed on other grounds 33 N.J. 262 (1960). Pursuant to this power, the Legislature has created the office of municipal assessor for the purpose of valuing property for taxation. It has provided for the manner in which the office of the municipal assessor shall be filled. In some municipalities the assessor is appointed either by the mayor or the governing body, and in other municipalities the assessor is elected by the people. In the case at bar the plaintiff was appointed by the Director of the Department of Revenue and Finance, in accordance with the Walsh Act, N.J.S.A. 40:72-7. The Legislature has also fixed and defined the duties of an assessor.
The Legislature, in creating the office of tax assessor has provided with respect to real property that:
"The assessor shall * * * determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for * * *" N.J.S.A. 54:4-23
The above statute is a directive to the assessors to exercise independent judgment in valuing real property. Thus, the assessment of property partakes, in a sense, of *267 a judicial quality. 4 Cooley, Taxation (4th ed. 1924), section 1601, page 3181. In exercising the quasi-judicial functions of his office, the assessor must feel free to make an independent judgment. In 4 Cooley, Taxation (4th ed. 1924), section 1621, page 3239, the author stated that:
"To insure to him [referring to the assessor] the necessary feeling of security, it is necessary that he be altogether exempt from responsibility to such interested parties as may be dissatisfied with his conclusions, and who might be inclined, if the law permitted it, to call him to personal account for his mistakes or faults of judgment, and endeavor to recover from him a compensation for any loss that they may have suffered as a result of his action. The policy and justice of this exemption are so plain and reasonable that the rule meets with universal assent, and is applied in all cases where functions of a judicial nature are exercised. `They who are intrusted to judge ought to be free from vexation, that they may determine without fear; the law requires courage in a judge, and therefore provides security for the support of that courage.' * * * And this principle of protection is not limited in its application to the judges of courts, but extends to all officers who have duties to perform which in their nature are judicial, and which are to be performed according to the dictates of their judgment."
The only limitation of the above rule is that the officer not act from an improper or corrupt motive. Furthermore, the decisions of the assessor, being quasi-judicial, are not in the absence of fraud or other violation of the law subject to collateral attack. Board of Chosen Freeholders of Ocean County v. Township of Lacey, 42 N.J.L. 536 (Sup. Ct. 1880).
The defendants urge that they do not seek to hold plaintiff personally liable for any wrongful or negligent act, but merely wish to subject him to interrogation. However, this court is of the opinion that the above rationale is equally applicable to the interrogation of the assessors in regard to their assessment methods.
A municipal corporation, being a creature of the Legislature, can exercise only those powers granted to it by the Legislature. Any power or authority which is not specifically given to a municipality is generally conceded to *268 be withheld unless it arises by necessary or fair implication, or is incidental to the power expressly conferred. Fred v. Mayor, etc., of Old Tappan, 10 N.J. 515 (1952). The grant of such police power has "been strictly limited to matters of local concern necessary and proper for the good and welfare of local inhabitants and are not applicable to those matters involving state policy or in the realm of affairs of general public interest." Galante v. Teaneck Department of Health, 70 N.J. Super. 362 (Law Div. 1962).
The method used in assessing property is determined by the Legislature, and once determined constitutes a state policy. By enacting R.S. 54:1-25, the Legislature vested the power to investigate the methods of local assessors in the Director of the Department of Taxation. In addition, the county boards of taxation have supervision and control over the municipal assessors and may make rules and other directives which the municipal assessors are required to follow in making their assessments. R.S. 54:3-16. The county board may also examine any municipal assessor and may make any investigation it may deem advisable in the discharge of its duties to secure the taxation of all property in the county at its true value. N.J.S.A. 54:4-47. Ridgefield Park v. Bergen County Board of Taxation, supra. No similar statute has been enacted conferring such authority upon municipalities. Neither can the powers possessed by the Director of the Division of Taxation and the county boards of taxation be said to be incidental to the power of the municipality to elect, appoint or remove assessors, nor do these powers arise by necessary or fair implication.
In City of Rockland v. Farnsworth, 93 Me. 178, 44 A. 681, 682 (Sup. Jud. Ct. 1899), the court stated:
"Assessors of taxes, though chosen by the city or town, are public officers. Their duties are imposed by law, and clearly defined by statute. In the discharge of those duties they are not subject to the direction or control of the municipality. They must determine *269 the persons and property, and its value, subject to taxation, under the provisions of law. If they omit from any cause to assess a person or property that by law should be assessed, the municipality must bear the loss. To this extent their acts and omissions bind the municipality. The error cannot be corrected by it. The assessors' tenure of office is fixed by law. It cannot be changed by the city government or by the electors. No element of principal and agent exists in their relations to the municipality. It is not liable to an action for their omissions or mistakes, unless made so by statute. No statute imposes a liability upon the municipality for an omission to assess a particular person or property."
Also see 51 Am. Jur., Taxation, section 662; Hodgman v. City of Taunton, 323 Mass. 79, 80 N.E.2d 31 (Sup. Jud. Ct. 1948).
It is the judgment of the municipal assessor which the Legislature has determined to be the method for determining the true value of the property within a single taxing district. In exercising said judgment, the assessor is exercising a quasi-judicial authority as an agent of the Legislature, subject to the control and supervision of the county boards of taxation and the Director of the Division of Taxation in the manner provided by statute.
The assessor, in his relation to the municipality, is in much the same position as a magistrate. See Kagan v. Caroselli, 30 N.J. 371 (1959), wherein the court stated that "the power [of the municipality] to appoint did not make the functions of a magistrate a phase of local government. Rather, in exercising the appointive power, the governing body acts merely as a statutory agent." In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment. To insure this protection, they should not be called upon to explain or justify their methods of calculating assessments. Those who feel aggrieved or discriminated against as a result of local assessments are provided with a statutory method of appeal by which their grievances will be heard and determined. Complaints of inefficiency may *270 also be lodged with either the Director of the Division of Taxation or the county board of taxation. Accordingly, I find that the governing body is without authority to interrogate the plaintiff regarding his methods of assessment, such jurisdiction being vested by statute in the Director of the Division of Taxation and the county board of taxation.
The final question presented for determination is whether the plaintiff failed to file his oath of office within the time required by law and thereby forfeited his right to the office of tax assessor. The decision rests on a finding of fact. This court finds that he did in fact file his oath of office on the day following his appointment. Credibility is placed by the court in plaintiff's statement under oath to that effect.
An appropriate form of judgment in accord with the views herein expressed is to be submitted pursuant to R.R. 4:55-1.