MENYUK, J.T.C.
Defendants WNY Properties, L.P. (“WNY’) and Post and Coach Freehold Associates, L.L.C. (“Post and Coach”), move for an order of summary judgment dismissing the complaints in these local property tax actions in which plaintiff Borough of Freehold seeks increases in the assessments of the subject property for tax years 2000 and 2002. Defendants contend that these appeals were instituted only because successive sales of the property were made at sales prices significantly higher than the assessments and that the appeals are no more than an attempt by the municipality to accomplish indirectly the unconstitutional spot assessment which its assessor is barred from making. West Milford Tp. v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990).
Plaintiff municipality denies that the appeals were brought solely as a consequence of the sale of the property. It instead asserts that, because the subject property has continually been the subject of tax appeals and disputes, the tax assessor and the local governing body have evaluated this property almost every year since 1993. Plaintiff therefore maintains that, because defendants have failed to show that a genuine issue of material fact does not exist, defendants’ motion for summary judgment should be denied.
The subject property is a garden apartment complex with a history of property tax appeals dating back to at least 1993. Each of those appeals was settled on the following terms:
Tax Year Original Assessment Settlement Amount
1993 $3,600,000 $3,050,000
1994 3,600,000 3,025,000
1995 3,050,000 3,000,000
3,025,000 2,950,000 1996
*593 As part of the settlement of the 1995 and 1996 matters, the taxpayer (defendants’ predecessor in interest) and plaintiff agreed that the assessments for 1997 and 1998 would be $2,925,000. For both tax years presently at issue, the property was assessed at $2,925,000. The general average ratios, and the upper and lower limits of the common level range, as determined by the Director, Division of Taxation, pursuant to N.J.S.A. 54:l-35b, for plaintiff for the years under review were:
Average Ratio Upper Limit Lower Limit
2000 95.09% 100.00% 80.83 %
2002 84.26% 96.90% 71.62 %
In February 1998, the property was sold by its former owners to WNY. The deed reflected a purchase price of $4,165,000. In September 2000, WNY transferred the property to Post and Coach for a consideration of $4,146,849. The motion papers did not disclose whether WNY and Post and Coach are related, but the deed from WNY to Post and Coach lists the same mailing address for both entities.
In his deposition testimony, the municipal assessor stated that he had learned of the February 1998 sale when he received a copy of the deed from the county, and that he also recalled reading about the sale in a newspaper article. He did no further investigation of the transaction apart from a routine review of the deed for the purpose of determining whether the sale was “usable” for purposes of completing the SR-1A, a form on which the assessor reports real property sales for use by the Director, Division of Taxation, in the computation of the school aid ratio pursuant to N.J.S.A. 54:1-35.1, and the average ratio of assessed to true value of property in a taxing district pursuant to N.J.S.A. 54:l-35a(a) (the “Chapter 123 ratio”). See Fort Lee Bor. v. Director, Div. of Taxation, 12 N.J.Tax 299, 301-02 (1992), aff'd, 13 N.J.Tax 323 (App.Div.1993), certif. denied, 134 N.J. 563, 636 A.2d 521 (1993) (describing the process of data gathering for computation of the ratios). The assessor did, however, advise the municipal attorney of the sale and pointed out to her that it was “ironic” that the *594 municipality had settled so many appeals in prior years when the sales price was more than a million dollars in excess of what the prior owners had believed the value to be. Apart from his communication with the municipal attorney, the assessor had no other discussions of the property or of the sale with any other representative of plaintiff in connection with plaintiffs determination to institute an appeal of his assessment for tax year 2000.[1]
The assessor acknowledged that it would have been improper for him to change the assessment of a single property based solely on its sale. He also testified that, while he had no direct knowledge of the reason for the municipal appeal, he believed that his conversation with the municipal attorney led to plaintiffs decision to appeal the 2000 tax year assessment. It was also his belief that, during the tax years in issue, plaintiff had not appealed the assessment of any other property where a recent sale price indicated possible underassessment.
More particularly, the assessor stated that the 1998 sale of the subject property was part of the sampling used in the computation of the 1999 Chapter 123 ratio, that the ratio of assessed value to the sales price (the “sales ratio”) of the subject property was 70.23%, whereas the average ratio for 1999 was 94.71%; that the lower limit of the Chapter 123 range for 1999 was 80.50%; and that the sales ratio of the subject fell below the lower limit of the Chapter 123 range. See N.J.S.A. 54:l-35a (defining average ratio and common level range). These facts indicated to the assessor that the subject property was possibly underassessed. The assessor further acknowledged that in each of the tax years 1999 through 2002, several residential properties had sales ratios below the lower limit of the Chapter 123 range, indicating possible underassessments, and that in some of those years there had been sales of vacant land and of class 4 property[2] with sales ratios *595 below the lower limit of the Chapter 123 ratio, yet no municipal appeals had been filed challenging any of those assessments. The assessor conceded that he had no recollection of reviewing the appeals history of other properties where the sales ratios indicated possible underassessment. The assessor also admitted that he had not called to the attention of the municipal attorney or of anyone else within municipal government the possible underassessment of any of those properties.
He also testified that he had no recollection of voluntarily reducing the assessment of any property where the ratio of assessed valuation to sales price exceeded 100%. He could not recall whether plaintiff had appealed the assessments of any other apartment buildings or complexes, although he believed that, where the assessment of other apartment buildings or complexes had been appealed by the owner, plaintiff had filed counterclaims.
Defendants’ motion is made pursuant to R. 4:46, which provides that summary judgment should be granted when “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2. “By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a ‘genuine issue as to any material fact challenged.’ ” Brill v. Guardian Life Insurance Company of America, 142 N.J. 520, 529, 666 A.2d 146 (1995). If an opposing party offers no affidavits or matter in opposition, that party cannot be heard to complain if the court grants summary judgment. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24, 28 (1954). The court must “consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.” Brill, supra, 142 N.J. at 540, 666 A.2d at 156.
*596 Plaintiff has not submitted any competent evidence in opposition to the motion. While it is asserted that plaintiff and the assessor have reviewed the assessment of the subject property every year, there is no evidence of the nature of that review, or of what precisely in the review led to the decision to appeal. Although plaintiff denies that the decision was made solely on the basis of the sale, it has not come forward with any evidence of-a different motivation. Accordingly, the court is compelled to take as true the uneontradicted facts in the defendants’ moving papers, viewed in the light most favorable to the municipality. Judson, supra, 17 N.J. at 75, 110 A.2d at 27. Examined in that light, reasonable minds could only conclude that the sale of the subject property in 1998, resulting in a sales ratio below that of the lower limit of the common level range, played some role in the municipality’s decision to appeal the assessment. There is no issue of material fact. The only issue for decision is a legal one: whether a municipal appeal of an assessment suffer from the same constitutional infirmities as a spot assessment where the decision to appeal is based in some part on the sale of the property. The matter is therefore ripe for summary judgment.
Spot assessment of the “welcome stranger” pattern is the practice of singling out for reassessment only those properties purchased in a given tax year, while leaving undisturbed the assessments of other properties in the same class that have not been sold. Van Decker, supra, 120 N.J. at 361, 576 A.2d at 885. In Van Decker, the assessor increased the assessment on a property solely on account of its recent sale. The new assessment was computed by applying a ratio (expressed as a percentage) to the sales price. The ratio selected by the assessor was within the Chapter 123 common level range. Id. at 357-58, 576 A.2d at 883. It was the position of the municipality that, even if the selection of the new owners for reassessment had been discriminatory, the taxpayers were not entitled to any relief because the ratio of the new assessment to value was within the common level range and was therefore permissible. Id. at 359, 576 A.2d at 883.
*597 The Court noted, id. at 360, 576 A.2d at 884, that equality of treatment and burden in taxation was a fundamental constitutional right guaranteed by the Uniformity Clause, N.J. Const., art. VIII, § 1,111(a), which provides:
Property shall be assessed for taxation under general laws and by uniform rules. All real property assessed and taxed locally ... shall be assessed according to the same standard of value ...
Moreover, the Equal Protection Clause of the United States Constitution, amend. XIV, § 1, protects an individual from state action which selects the individual out for discriminatory treatment by imposing taxes not imposed on others of the same class. Van Decker, supra, 120 N.J. at 362-63, 576 A.2d at 885-86. In a majority opinion,[3] the Court concluded that the spot assessment engaged in by the municipality in Van Decker was constitutionally invalid under the federal and state constitutions. Id. at 364, 576 A.2d at 886.
The Court explained that the practical effect of spot assessment is that recent purchasers have their property reassessed on the basis of current market values, whereas properties of equivalent market value which have not recently been sold have their existing assessments continued from year to year. Assuming that property values are increasing, the new owner will have a greater proportionate tax burden than an owner who has held property of equal market value over a long period of time. Id. at 361-62, 576 A.2d at 884-85. This effect is exaggerated where there has not been a recent revaluation. Id. at 364, 576 A.2d at 886.
In Van Decker, the contested assessment was for tax year 1985, and the last district-wide revaluation had taken effect in 1970. In the present case, the assessor testified that the last revaluation of property in Freehold was effective for tax year 1989, and in 1991 there was a reassessment for the purpose of generally lowering the assessments throughout the municipality. The Monmouth *598 County Board of Taxation has ordered Freehold to conduct a revaluation to be effective for tax year 2004.
The Van Decker Court found the municipality’s reliance on Chapter 123 to be without merit, because the spot assessment in issue constituted an “egregious” case of discrimination, violative of the New Jersey Constitution, and that the constitutional guarantee of equality of treatment prevailed over the statutory standards set forth in Chapter 123. The appropriate remedy was to restore the assessment existing prior to the sale of the property. Van Decker, supra, 120 N.J. at 364-65, 576 A.2d at 886-87.
Revisions of assessments not amounting to a municipal-wide revaluation are not necessarily constitutionally invalid. Van Decker cited several examples of permissible reassessments, such as revisions based on new improvements increasing the value of the property; the addition of formerly exempt property; the reassessment of apartments converted to condominiums; the reassessment of all apartment complexes in a township based on the adoption of a vacancy decontrol ordinance; and the reassessment of all industrial and commercial properties based on a study showing they were underassessed as a class. Id. at 362, 576 A.2d at 885.[4]
There has been a recent spate of litigation which has required this court to examine at what point the limits of legitimate assessment revision are reached. Each determination is fact sensitive. Shippee v. Brick Tp., 20 N.J.Tax 427, 430 (2002), appeal docketed, Nos. A2538-02T3, A2539-02T3, A2542-02T3 (App.Div. Dec. 31, 2002); Corrado v. Montclair Tp., 18 N.J.Tax 200, 202 (1999). See, e.g., Corrado, supra, (dismissing complaints *599 challenging assessments on properties which had recently been sold where the assessor routinely reviewed the multiple real estate listings within the municipality and compared the actual characteristics of the house with the descriptions on the property record cards); Regent Care Ctr., Inc. v. Hackensack, 19 N.J.Tax 455 (2001), appeal docketed, No. A540-01T5 (App.Div. Sept. 26, 2001) (finding no spot assessment in the revised assessment of a nursing home undertaken as part of an assessment maintenance program, where there had been no sale of the subject property, and the particular reassessment in issue was based solely on the fact that recent sales of similar nursing homes in neighboring municipalities yielded a per bed value significantly higher than the plaintiffs); Centorino v. Tewksbury Tp., 20 N.J.Tax 35 (App.Div.2001) (finding insufficient the assessor’s explanation that the sale of the subject property had caused him to determine that the property had been improperly categorized as a construction class 18 rather than as a class 20, and holding that: “Where the assessor’s appraisals of the differences between these classes was so obviously subjective and discretionary, and not readily discernible, the tax assessor must establish additional objective proofs ... in order ... to justify his statement that the subject property was not singled out solely on the basis of its sale.” 20 N.J.Tax at 43); Brunetti v. Cherry Hill Tp., 21 N.J.Tax 80, 2002 WL 32139430 (App.Div.2002), certif. denied, 175 N.J. 547, 816 A.2d 1049 (2003) (affirming Tax Court decision concluding that there was an adequate independent basis for reassessment where assessor inspected property upon an application for farmland assessment and discovered that, contrary to description on property record card, property contained no wetlands); Shippee v. Brick Tp., supra, (upholding reassessment of properties within one of approximately 600 neighborhoods within the municipality, and finding that the assessor’s determination that prices in the neighborhoods were changing at different rates was a legitimate basis for revising assessments within those neighborhoods where prices had changed the most).
The only certainty that emerges from these cases is that there is a tension between the assessor’s statutory duty to assess *600 property annually, employing his or her judgment to reflect full and fair value, N.J.S.A. 54:4-23, and the constitutional requirement that the selection of particular properties for updated assessments may not be arbitrary and discriminatory. See, e.g., Van Decker, supra, 120 N.J. at 365-69, 576 A.2d at 886-89 (Pollock, J., concurring with respect to the finding that the selection of property for reassessment solely because of its recent sale is unconstitutional, bub also emphasizing the importance of diligence in updating tax rolls). A principal cause of the failure of a municipality’s assessments to conform to the requirements of the Uniformity Clause is that assessments are not kept current. Switz v. Middletown Tp., 23 N.J. 580, 603-05, 130 A.2d 15, 27-29 (1957) (Weintraub, concurring); In re Appeal of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 26-30, 166 A.2d 763, 765-768 (1961); Tri-Terminal Corp. v. Edgewater Bor., 68 N.J. 405, 410-14, 346 A.2d 396, 399-401 (1975); Piscataway Assoc., Inc. v. Piscataway Tp., 73 N.J. 546, 551-54, 376 A.2d 527, 529-31 (1977); Van Decker, supra, 120 N.J. at 364, 576 A.2d at 886. Ideally, the annual assessment list reflects the full and fan’ value of every parcel in the municipality. Our Supreme Court has recognized, however, that “practicalities obviously preclude most assessors reviewing every assessment line item every year,” Tri-Terminal Corp., supra, 68 N.J. at 414, 346 A.2d at 401. Therefore, assessors must, on the one hand, be alert to changed valuation factors particularly affecting individual properties in years between revaluations and make the appropriate adjustments. Ibid. On the other hand, the “valuation factor” utilized by the assessor must be a valid one. The issue in each of the spot assessment cases cited above was whether the assessor had revised assessments based on a valuation factor which was reasonable and nondiscriminatory.
While the foregoing serves as a necessary background, this case is not really about spot assessment: the assessment has not been revised since the sale of the subject property in 1998. What is being challenged is the validity of plaintiffs determination to appeal the assessment. Nevertheless, when discussing spot assessment, the courts of this State have sometimes imprecisely attributed the acts of an assessor to the municipality which *601 employs that assessor. See, e.g., Van Decker, supra, 120 N.J. at 362, 576 A.2d at 885 (“West Milford’s practices also violated the equal-protection clause of the fourteenth amendment.”). Notwithstanding this occasional imprecision, our courts have repeatedly emphasized that the municipality and the assessor have distinct and separate roles in the assessment and taxation of property. The cases discussing those roles have generally arisen in the context of a dispute between the assessor and the governing body. See e.g., Arace v. Town of Irvington, 75 N.J.Super. 258, 183 A.2d 104 (Law Div.1962) (municipality could properly conduct an investigation designed to disclose whether it has been subject to discrimination because of certain tax assessments, but could not interrogate the assessor regarding his methods of assessment); Ream v. Kuhlman, 112 N.J.Super. 175, 190, 270 A.2d 712, 720 (App.Div.1970) (municipality may not limit the statutory term of office applicable to assessors); Rosenberg v. South Orange Tp., 8 N.J.Tax 1, 5-6 (1985) (explaining the rationale of the procedure whereby the Tax Court permits entry of judgment in local property tax appeal cases pursuant to agreement of the municipality and the taxpayer, provided that the agreement contains a statement that the assessor has been consulted and concurred in the settlement); Jeffers v. City of Jersey City, 8 N.J.Tax 313 (1986) (voiding municipal resolutions directing the assessor to rollback certain assessments and to cease reassessing any residential properties based solely on account of a recent sale price of the subject or of neighboring properties until a city-wide reassessment was implemented, and upholding a resolution authorizing the expenditure of funds to assist the assessor in the defense of appeals before the county board, but specifically precluding assistance in defense of assessments which had been increased as a result of recent sales); Clinton Tp. Citizen’s Comm., Inc. v. Mayor of Clinton Tp., 185 N.J.Super. 343, 448 A.2d 526 (Law Div.1982) (analyzing distinct roles of assessor and municipality in tax appeal litigation when asked to resolve whether the local governing body or the local assessor had the authority to initiate, prosecute, settle and withdraw from tax litigation on behalf of a municipality).
*602 Taken together, these cases stand for the principle that the powers and duties of an assessor are prescribed by the Legislature, which has directed that the assessor independently determine the full and fair value of all real property in a taxing district. N.J.S.A. 54:4-23. Consequently, local municipal governing bodies or officials may not interfere with the assessor in the performance of his or her duties. Jeffers, supra, 8 N. J.Tax at 317; Arace, supra, 75 N.J.Super. at 268-69, 183 A.2d at 110-11. Where a municipality disagrees with the assessments of its assessor, the appropriate recourse is by way of appeal of those assessments. Arace, supra, 75 N.J.Super. at 269, 183 A.2d at 111. Moreover, it is the municipality and not the assessor which controls the decision to appeal, as well as the conduct of the litigation, including any decision to settle. Clinton Township Citizen’s Comm., Inc., supra, 185 N.J.Super. at 352, 448 A.2d at 531. In recognition of the assessor’s crucial role in local property tax assessment and administration, however, when an assessor does not concur in a municipality’s decision to settle, the municipality must support the settlement with such proof as this court may require. R. 8:9-5; Pressler, Current N.J. Court Rules, comment 4 on R. 8:9-5 (2002); Rosenberg, supra, 8 N.J.Tax at 5-6.
In this ease, the municipality and the assessor are not at odds. Rather, they apparently agree that the subject property was underassessed for the tax years in issue. The allegation is that the assessor and the municipality collaborated.
This court lately has had occasion to take notice of the fact that assessors are more often than not members of the municipal family and the municipal tax appeal litigation team. Mobil Oil Corp. v. Greenwich Tp., 20 N.J.Tax 66, 69-70 (2002). Judge Small commented there on the clear conflict between the assessor’s statutory duty to assess property independently at its full and fan-value, and the assessor’s role as an agent of the municipality in defending his or her assessment:
[Assessors in New Jersey, as part of the municipal family of government administration and the municipal tax appeal litigation team, have a challenging task in making annual assessments completely free and independent of the needs and *603 interests of their paymasters, the mayors and councils. Although the appeal of an assessment should be adversarial (a contest between the taxpayer and the taxing district), the setting of assessments must be the objective and independent act of the assessor without regal'd to the defense of prior assessments and the litigating interests of the taxpayers or the municipalities.
[Id. at 84-85.]
In the present case, the assessor adhered to the dictates of Van Decker, and retained the pre-sale assessment on the subject property. Although defendants contend that the assessor, through the municipal attorney, advised the municipal governing body that an appeal was indicated, the source of the governing body’s knowledge of the sale price is not significant. The issue for decision is whether a municipal appeal of the assessment of a recently sold property, without any apparent basis for the appeal except for the possible under assessment revealed by the sales price, creates the same evil condemned by the Van Decker Court.
As discussed above, the majority opinion in Van Decker indicates that it was the practice of selecting only newly purchased homes for increases in assessed valuation, while leaving the assessments of other homes undisturbed, which constituted spot assessment in violation of the state constitutional guarantee of uniformity of taxation and the federal constitutional guarantee of equal protection. Van Decker, supra, 120 N.J. at 364, 576 A.2d at 886. What is not clear from the majority opinion is whether it is the selection process itself which is discriminatory, or the disparity in taxation resulting from the selection process. The disparity is that new owners pay proportionately higher taxes than owners of similar properties which have not recently been sold and which have assessments that have been carried over from year to year without revaluation.
Moreover, in Van Decker there were two separate concurring opinions, each of which had separate views on the relative significance of the selection of the Van Decker property for reassessment and the actual disparity of the Van Decker assessment when compared with other properties in the municipality. In his concurrence, Justice O’Hem pointed out that the assessor in Van Decker gave something like Chapter 123 relief by applying a ratio *604 falling within the Chapter 123 range to the adjusted sales price. Id. at 369, 576 A.2d at 889. Because the use of such a ratio produces a rough equality in treatment, the resulting valuation was roughly comparable to the valuation of comparable properties. It was not that the Van Deckers’ tax burden was necessarily disproportionate, but that the process of spot assessment itself violated the Uniformity Clause and was a practice the Court wished to deter. Ibid. The suggestion is, therefore, that there is something invalid in the selection process.
By way of contrast, Justice Pollock emphasized that the reassessment of properties solely because those properties have been recently sold is “patently unconstitutional because it discriminatorily shifts the municipal-tax burden to new owners in the municipality ....” Id. at 366, 576 A.2d at 887. Under this view, the evil to be remedied was the disproportionate tax burden borne by the Van Deckers, and not the selection of their property for reassessment.
WNY and Post and Coach do not allege that their assessments are disproportionately large, or that appeal to this court may result in a disproportionately large assessment. Notably, it was they who elicited from the assessor testimony that the ratio of the assessed value of their property to the sales price fell below the lower limit of the Chapter 123 ratio. In other words, it would appear that defendants presently enjoy favorable, discriminatory tax treatment, and that it is defendants’ contention that they should be permitted to continue enjoying that favorable treatment unless every assessment which does not fall within the common level range is also appealed by Freehold.
Defendants equate the alleged illegality of the selection of its property for appeal with the selective assessment found invalid in Van Decker. An appeal is not, however, the equivalent of an assessment. An assessment is the assessor’s unilateral determination based on the price at which, in the assessor’s judgment, a parcel of property would sell for at a fair and bona fide sale by private contract on October 1 preceding the tax year. N.J.S.A. 54:4-23. In making an assessment, the assessor acts as *605 an agent of the Legislature in a quasi-judicial capacity similar to that of a magistrate, and must act in a fair and impartial manner. See, e.g., Mobil Oil Corp. v. Greenwich Tp., supra, 20 N.J.Tax at 81. As a consequence of the authority vested in the assessor, an assessment enjoys a presumption of correctness. In order to overcome the presumption of correctness and defeat an assessment, an aggrieved party bears the burden of coming forward with competent evidence to rebut the presumption. Pantasote Co. v. City of Passaic, 100 N.J. 408, 413, 495 A.2d 1308, 1310 (1985).
A municipal appeal is a claim that a property has been underassessed, and a request for relief from this court in the form of a determination as to the property’s true value. In any appeal, regardless of by whom made, this court is required to “apply its own judgment to valuation data submitted by experts in order to arrive at a true value and find an assessment” for the subject property. Glen Wall Assocs. v. Wall Tp., 99 N.J. 265, 280, 491 A.2d 1247, 1255 (1985) (quoting New Cumberland Corp. v. Roselle Bor., 3 N.J.Tax 345, 353 (1981)). Further, when the ratio of the assessed value of a property to the true value determined by the court falls outside the common level range of such ratios within the municipality, the court revises the assessment pursuant to Chapter 123 to reflect the common level of assessment. N.J.S.A. 54:51A-6; see also Glen Wall Assocs., supra, 99 N.J. at 271 n. 2, 491 A.2d at 1250 n. 2 (“The ‘Chapter 123 ratio’ is the average ratio of assessed value to market value of all property in a town or tax district.” (citations omitted)); Murnick v. City of Asbury Park, 95 N.J. 452, 456, 471 A.2d 1196, 1198 (1984) (“Chapter 123 provides a statutory formula for determining whether an assessment is discriminatory.”). Should the taxpayer be able to overcome the strong presumption that the Chapter 123 ratio reflects the common level by establishing that application of the ratio would be virtually confiscatory, the court may fashion other relief. Murnick, supra, 95 N.J. at 463, 471 A.2d at 1202.
Accordingly, although a tax appeal ultimately results in an assessment, the taking of an appeal is not itself an act of assessment. Any single tax appeal tried to its conclusion will generally *606 result in an assessment which reflects the market or true value of the property, as revised to reflect the amount by which that value deviates by more than the statutorily prescribed amount from the Chapter 123 ratio of the taxing district. This is the ease without regard to whether the appeal is commenced by the municipality, the taxpayer, or by a third person.[5] Theoretically, every appeal tried to its conclusion will result in greater uniformity by bringing the ratio of assessed to true value of the subject property to the common level of the taxing district.
A single appeal will not, however, cure an assessment list that lacks uniformity. If assessment lists are not regularly revised to reflect current market values, and assessments are instead earned over from year to year, some properties will remain underassessed unless the municipality brings an appeal. Other properties will be overassessed unless the taxpayer brings an appeal. Absent an appeal of every inaccurate assessment, there will be disparity in the tax treatment of property in a given taxing district. I conclude that the taking of an appeal with respect to every assessment which the municipality has some reason to believe is incorrect is neither practical nor required by the Uniformity Clause.
A taxpayer is not constrained by the requirements of the Uniformity Clause, and may appeal the assessment of his or her property without regard to whether the resulting assessment is disparate from those of similarly situated properties. The role of *607 the municipality with respect to compliance with the Uniformity Clause is more ambiguous. The municipality is held responsible for the consequences of violations of the Uniformity Clause. See Van Decker, supra, 120 N.J. 354, 576 A.2d 881, where the remedy fashioned by the Court was “to strike the Township’s assessment resulting from the selective practice and restore the 1984 assessed valuation.” Id. at 365, 576 A.2d at 887. As a practical matter, the Township was required to refund the excess taxes paid by the Van Deckers because of the invalidly increased assessment. N.J.S.A. 54:3-27.2. As noted above, however, assessments are solely the responsibility of the assessor. A municipality may not interfere in the assessor’s exercise of judgment, and may express its disagreement with any particular assessment only by filing an appeal.
It is also true that appeals are not a municipality’s sole recourse where its assessment list reflects a more general lack of uniformity. While municipalities are prohibited from interfering with the assessor’s function of valuing property, municipalities may exert some control over whether revaluations are conducted and how often such revaluations are performed. A municipality may, for example, voluntarily propose a revaluation. N.J.S.A. 54:1-35.36; N.J.A.C. 18:12A-1.14(a).
Revaluations are expensive. Revaluations are also often unpopular with some portion of the taxpayers within a taxing district. See, e.g., J.H. Becker, Inc. v. Marlboro, 82 N.J.Super. 519, 198 A.2d 463 (App.Div.1964) (taxpayers dissatisfied with results of revaluations sought to invalidate results and also sought new revaluations). Moreover, that unpopularity may have consequences for the municipality’s governing body. See, e.g., Essex County Bd. of Taxation v. City of Newark, 73 N.J. 69, 372 A.2d 607 (1977) (order for civil commitment of City’s councilmen for failure to approve appropriation for revaluation was modified to order revenues distributable by State to the City for its general purposes be diverted to pay for the revaluation); Clinton Tp. Citizen’s Comm., Inc. v. Mayor of Clinton Tp., supra, 185 N.J.Super. at 345-346, 448 A.2d at 527-28 (taxpayers who were upset by a revaluation and the ensuing tax appeal litigation, expressed their *608 dissatisfaction at the polls, resulting in changes in membership on the township council). For all of these reasons, municipalities are frequently reluctant to seek revaluations, and sometimes resist orders directing revaluation. See, e.g., Essex County Bd. of Taxation v. City of Newark, 340 N.J.Super. 432, 774 A.2d 655 (App.Div.), certif. denied 170 N.J. 387, 788 A.2d 772 (2001) (recounting the lengthy history of efforts to enforce a 1972 order for revaluation); Essex County Bd. of Taxation v. Caldwell Tp., 19 N.J.Tax 587 (2001) (setting forth detaUs of municipal resistance to an order of county board of taxation directing revaluation).
The duty to determine whether a revaluation is required has been assigned by the Legislature to the municipal assessor pursuant to the assessor’s obligation under N.J.S.A. 54:4-23 to assess property at its full and fair value, and to the county board of taxation pursuant to its supervisory authority over assessors, N.J.S.A. 54:3-16, and its obligations with respect to the equalization of property tax assessments in the county. N.J.S.A. 54:3-18; N.J.S.A. 54:4-47. Whether a revaluation is necessary is determined pursuant to standards established by the Director, Division of Taxation. N.J.S.A. 54:1-35.35; N.J.A.C. 18:12A-1.14(b)(l).
Under the statutory system established by the Legislature to effectuate the constitutional mandate of uniformity in local property taxation, municipalities have not been delegated the power to enforce the Uniformity Clause, they are not obliged to initiate revaluations, and have no direct power to do so. Relief analogous to that granted in Van Decker — the maintenance of the assessment on the subject property at its pre-sale amount — is inappropriate and inequitable to the remaining taxpayers in the plaintiff municipality where the municipality has no way of achieving uniformity of taxation. Van Decker presented an “egregious case of discrimination” in assessment. Van Decker, supra, 120 N.J. at 365, 576 A.2d at 886. The rollback of an increased assessment is extraordinary relief to be invoked in lieu of relief pursuant to Chapter 123 when an assessor has acted illegitimately and unreasonably in making assessments. Shippee, supra, 20 N.J.Tax at 436.
*609 The only remedy provided directly to a municipality in cases of discriminatory assessment is appeal pursuant to N.J.S.A. 54:3-21. The standard for judicial review of municipal exercise of power delegated to it by the Legislature is whether the challenged action is reasonable and not arbitrary. Ebler v. City of Newark, 54 N.J. 487, 491, 256 A.2d 44, 46 (1969); West Point Island Civic Ass’n v. Township Comm. of Dover, 54 N.J. 339, 347, 255 A.2d 237, 241 (1969). Where a municipal assessment list generally conforms to the requirements of the Uniformity Clause, it is reasonable and not arbitrary for a municipality to elect to pursue appeals only in those cases where there is the possibility of a substantial increase in assessment which would justify the costs of litigation. Hudson & Manhattan R.R. Co. v. City of Jersey City, 6 N.J.Super. 333, 341-42, 71 A.2d 220, 224-25 (App.Div.), aff'd o.b. per curiam, 5 N.J. 434, 75 A.2d 923 (1950). The Appellate Division in that case found:
No sound reason has been advanced for prohibiting [the City] from seeking, in the fair and honest exercise of its judgment, to protect its ratables and vindicate its position by prosecuting appeals in situations where it had most at stake while, at the same time, abandoning its appeals in the greater mass of cases where the inconvenience and expense might well far outweigh the possible gain. The City is entitled to the benefit of the presumption that its action was taken in good faith and in the public interest and nothing in the testimony has established the contrary. We are satisfied that the appellants’ primary contention that the City’s resolutions constituted discriminatory action in violation of provisions of the Federal and State Constitutions is without merit.

Ibid.

I am not convinced that it should make a difference that a recent sale caused a municipality to discover that a property may have been underassessed. See, e.g., Corrado, supra, 18 N.J.Tax 200, dismissing appeals alleging illegal spot assessment, where the reassessments resulted from the assessor’s review of multiple real estate listings and her comparison of the description of the properties listed for sale with the description contained in the property record card. Under the facts presented by this motion, plaintiff was familiar with the assessment and appeal history of the subject property. When it learned of the sale price, the governing body could reasonably have determined it had erred in settling prior appeals. This appeal seeks to remedy what appears *610 to plaintiff to be an assessment which discriminated against it and the remaining taxpayers of Freehold.
There may be some circumstances under which selective appeal by a municipality may be arbitrary and unreasonable, such as, for example, when there is a general lack of uniformity within a taxing district and the municipality has resisted the efforts of its assessor or the county board of taxation to carry out a revaluation. On the facts presented by this motion, I do not find plaintiffs selection of this property for appeal to be unreasonable or arbitrary.
The majority opinion in Van Decker, supra, 120 N.J. 354, 576 A.2d 881, also found the selection of recently sold properties for assessment to be invalid under the Equal Protection Clause of the Fourteenth Amendment, which “ ‘protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class.’ ” Id. at 362-63, 576 A.2d at 885 (quoting Baldwin Constr. Co. v. Essex County Bd. of Taxation, 16 N.J. 329, 340,108 A.2d 598, 604 (1954)). Justice O’Hern noted, however, that the ease relied upon by the majority for the conclusion that spot assessment violated the Equal Protection Clause, Allegheny Pittsburgh Coal Co. v. County Comm’n of Webster County, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), involved disparities in treatment among taxpayers of a magnitude not involved in Van Decker, and that all the Equal Protection Clause required was “a rough equality in tax treatment of similarly situated property owners.” Van Decker, supra, 120 N.J. at 369, 576 A.2d at 889 (O’Hern, concurring) (quoting Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 343, 109 S.Ct. at 638, 102 L.Ed.2d at 697).
“The Equal Protection Clause ‘applies only to taxation which in fact bears unequally on persons or property of the same class.’ ” Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 343, 109 S.Ct. at 637-38, 102 L.Ed.2d at 697 (quoting Charleston Fed. Sav. & Loan Ass’n. v. Alderson, 324 U.S. 182, 190, 65 S.Ct. 624, 629, 89 L.Ed. 857, 863 (1945)). Taxation may bear unequally if the selection or classification of property for tax treatment is capricious or arbitrary and does not rest on some reasonable consider *611 ation of difference or policy. Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 344, 109 S.Ct. at 638, 102 L.Ed.2d at 697. Significantly, in Nordlinger v. Hahn, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992), the court sanctioned the difference in treatment between recent purchasers and long term property owners resulting from California’s Proposition 13, where the court found that the classification was determined by rational considerations of state policy that justified the difference in tax treatment. Id. at 11-12, 112 S.Ct. at 2332-33, 120 L.Ed.2d at 13-14.
In this case, I have found that the sale price of the subject played some role in the selection of the subject property for appeal, and have surmised that the economics of litigation also played some part in the determination by plaintiff to appeal. As discussed above, selection of property for appeal is not the equivalent of assessment and taxation. The effect of an appeal of the assessment of the subject property is an assessment at true value, adjusted to reflect the common level of assessment in the taxing district, which effectuates the policy of this State as expressed in the Uniformity Clause and in Chapter 123. There has been no demonstration that an assessment determined by the Tax Court would in fact bear unequally on persons or property of the same class. Similarly, there has been no demonstration that any revised assessment arrived at by this court would not provide the defendants with a rough equality of treatment. Allegheny Pittsburgh Coal Co., supra, 488 U.S. at 343, 109 S.Ct. at 638, 102 L.Ed.2d at 697.
I conclude that plaintiffs selection for appeal of the subject property’s assessment under the facts presented here did not violate either the Uniformity Clause or the Equal Protection Clause. Defendants’ motion to dismiss the complaint is therefore denied, and the matter will proceed to trial on the issues of valuation and discrimination.

 Nothing in the record indicates whether plaintiff considered appeals for tax years 1999 and 2001.

 Class 4 property is commercial or industrial property or apartments designed for the use of five or more families. NJ.A.C. 18:12-2.2.

 Justice Garibaldi, writing for the Court, was joined by Chief Justice Wilentz and Justices Handler and Stein. Justice Pollack wrote a separate concurring opinion in which Justice Clifford joined, and Justice O'Hern also wrote a separate concurring opinion.

 See N.J.S.A. 54:4-23, as amended by L. 2001, c. 101, § 1, effective June 14, 2001. The statute requires that, where an assessor has reason to believe that property constituting all or part of a taxing district has been assessed at a value higher or lower than is consistent with the constitutional requirement of uniformity, the assessor must obtain certain approvals from the county board of taxation and the Division of Taxation before proceeding with any reassessment of that property. Following the reassessment the assessor is required to demonstrate to the county board, through sampling, "that the reassessment is in substantial compliance with the portions of the taxing district that were not reassessed."

 An owner of property within a taxing district has been held to have standing to institute an appeal of the assessment of other property in the taxing district pursuant to NJ.S.A. 54:3-21, which authorizes an appeal by "a taxpayer ... feeling discriminated against by the assessed valuation of other property in the county.” See Atrium Dev. Corp. v. Continental Plaza Corp., 214 N.J.Super. 639, 520 A.2d 827 (App.Div.1987), where the owner of commercial property in Hackensack, which the owner conceded was fairly assessed, was permitted to seek increases in the assessments of properties owned by others, which the plaintiff contended were grossly underassessed. See also Lidell v. Mimosa Lakes Ass’n, 6 N.J.Tax 417 (1984) and Bostian v. Franklin State Bank, 1 N.J.Tax 270 (1980), where taxpayers appealed the assessments of other property in the same municipality, apparently without objection and without any discussion of standing by the court.